EDITH B. STONE, APPELLANT, V. PHYSICIANS CASUALTY ASSOCIATION OF AMERICA, APPELLEE.

FILED APRIL 15, 1936. No. 29596.

*Harley G. Moorhead, William G. Brown* and *Thomas, Thomas & Folts,* for appellant.

*Frank H. Woodland, contra.*

Heard before GOSS, C. J., DAY and CARTER, JJ., and ELDRED and TEWELL, District Judges.

CARTER, J.

This was an action brought by plaintiff in the district

court for Douglas county to recover death benefits of $10,-000 on two policies of accident insurance issued by the Physicians Casualty Association of America on the life of William Franklin Stone, husband of the plaintiff, in which policies the plaintiff was named as the beneficiary. At the close of all the evidence the trial court sustained defendant's motion to withdraw from the jury the question of liability over and above $600. Defendant thereupon consented to the entry of a judgment for plaintiff for $600, which was entered by the court. From the overruling of her motion for a new trial, plaintiff appeals.

The record shows that William Franklin Stone, the insured, was a dentist in Chattanooga, Tennessee. On May 3, 1933, Dr. Stone mailed applications for two $5,000-policies of accident insurance to the defendant which were received on May 6, 1933, and the policies issued on that date. On May 9, 1933, Dr. Stone was found in his garage overcome by the fumes escaping from the motor of his automobile. He died a few minutes later of carbon monoxide poisoning.

The sole question to be determined is whether death by carbon monoxide poisoning comes within the exception in the policies which limits recovery to $300 on each. The exception in question reads as follows: "(2) For death occurring in the following manner, the amount payable shall be limited to Three Hundred Dollars ($300.00) : * * * Third: Death resulting from accidental suffocation by illuminating or other gases or the accidental taking of any poison."

It must be conceded that an accident insurance company may limit its liability in any reasonable manner, and it may, therefore, provide that no liability will arise from death resulting from accidental suffocation by illuminating or other gases or the accidental taking of poison. The only question is whether the gas herein involved caused death by accidental suffocation.

The medical testimony is to the effect that carbon monoxide gas is a colorless, odorless and tasteless gas; that after inhalation it does not stay in the lungs and does not, therefore, act as a mechanical barrier, but acts upon the

respiratory center only. Death is caused when there is a sufficient concentration of carbon monoxide combined with the hemoglobin or red blood cells, which disposes of the oxygen. It acts as a poison by producing a chemical reaction which displaces the oxygen in the hemoglobin or red blood cells. The testimony is that it is generally accepted in the medical profession to be a deadly poison that paralyzes the respiratory system when taken into the lungs.

It is not disputed that Dr. Stone's death, in the case at bar, was the result of his inhaling the fumes from the exhaust of his automobile, commonly called monoxide gas. That death was therefore caused by the inhaling of gas cannot be denied. In *Birss v. Order of United Commercial Travelers,* 109 Neb. 226, 190 N. W. 486, this court said: "The term 'gas' is, in a sense, a generic term and is broad and sweeping in its meaning. In Webster's Unabridged Dictionary it is defined as 'an aeriform fluid; a term used at first by chemists as synonymous with air, but since restricted to fluids supposed to be permanently elastic, as oxygen, hydrogen, etc., in distinction from vapors, as steam, which become liquid on a reduction of temperature. In present usage, since all of the supposed permanent gases have been liquefied by cold and pressure, the term has resumed nearly`its original signification, and' is applied to any substance in the elastic or aeriform state.' "

Plaintiff contends that the expert testimony shows that the insured did not die as a result of accidental suffocation by illuminating or other gases. In construing the contract of insurance, words used therein will be considered as used in their ordinary and popular sense. The definitions or constructions placed upon them by the scientist or the expert cannot control. In the case of *Lewis v. Ocean Accident & Guarantee Corporation,* 224 N. Y. 18, 120 N. E. 56, 7 A. L. R. 1129, Mr. Justice Cardozo said: "To the scientist who traces the origin of disease, there may seem to be no accident in all this. * * * But our point of view in fixing the meaning of this contract, must not be that of the scientist. It must be that of the average man. * * * This test—the one

that is applied in the common speech of men—is also the test to be applied by courts."

What is the ordinary meaning of the words "suffocation by gas?" "Suffocate" has been defined as "to kill by stopping respiration, as by strangling or asphyxiation." "Asphyxiation" has been defined as "a state of asphyxia; suffocation." "Asphyxia" has been defined by the same authority as "apparent death, or suspended animation, in living organisms, due to deficiency of oxygen and excess of carbon dioxide, specif. in the blood, as in interruption of respiration from suffocation or drowning, or from the inhalation of irrespirable gases." Webster's New International Dictionary. The word "suffocation" is defined in Dorland's American Illustrated Medical Dictionary (16th ed.) as "the stoppage of respiration, or the asphyxia that results from it." The same authority defines "asphyxia" as follows: "Suffocation; also suspended animation from suffocation or a deficiency of oxygen in the blood. It is attended by a feeling of suffocation, cyanosis, and coma. * * * *Carbonica*, suffocation from the inhalation of coal gas, water gas, or carbon monoxide. * * * *Livida*, asphyxia in which the skin is livid from the presence of carbon dioxide in the blood, but the circulation continues."

In *Kingsley v. American Central Life Ins. Co.*, 259 Mich. 53, 242 N. W. 836, the court said: "There are, we think, few persons, except those who have received a medical education, or those who have given the matter due consideration, who would ascribe a death resulting from the inhalation of monoxide gas as due to poison."

Counsel for plaintiff contend that the policy is ambiguous and uncertain, and that as it was written by the insurance company it ought to be construed against it. This contention is best answered by the holding of the court in *Gorman v. Fidelity & Casualty Co.*, 55 Fed. (2d) 4, wherein the court said:

"The decisions of this court are in harmony with the elementary principle that doubt and ambiguity in an insurance policy should be resolved in favor of the insured and

against the insurer. It does not follow, however, that the terms of an insurance policy may be distorted from their natural meaning, or that the agreed liability of the insurer should be enlarged into one which only a new contract could have imposed, nor, indeed, that a court should indulge in scholastic subtleties to extend the rights of the insured. In the words of the late Judge Sanborn, referring to this rule of construction: 'But this rule ought not to be permitted to have the effect to make a plain agreement ambiguous, and then to interpret it in favor of the insured.' * * *

"Courts should not be 'cunning and astute to evade, rather than quick to perceive and diligent to apply, the meaning of the words,' as manifestly intended by the parties."

We have come to the conclusion, after a consideration of the definitions hereinbefore referred to, that a person suffers death as a result of suffocation by gas whether death was due to a deficiency of oxygen in the blood or to an interruption of the physical act of breathing that would prevent the inhalation of sufficient oxygen into the lungs. In the ordinary and popular sense, either results in death by suffocation by gas. It therefore falls within the exception contained in the insurance policy.

We therefore hold that the trial court did not err in withdrawing from the jury the question of liability over and above $600, and the judgment of the trial court in entering judgment for that amount is

AFFIRMED.