Jewell Gabbard **LITTRALL** and Louis Dyson, Plaintiff-Appellant,

v.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA**, a corporation, Defendant-Appellee.

No. 13510.

United States Court of Appeals Seventh Circuit.

Feb. 28, 1962.

Rehearing Denied March 30, 1962.

As Amended April 16, 1962.

John Alan Appleman, Urbana, Ill., C. E. Tate, Champaign, Ill., for appellant.

Austin W. Buchanan, Hutton, Hegeler, Bates & Buchanan, Danville, Ill., for appellee. Jackson R. Hutton, Danville, Ill., of counsel.

Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

This appeal involves a garnishment initiated by Jewell Gabbard Littrall, plaintiff-appellant,[1] who had recovered a judgment in the amount of $25,000.00, as Jewell Gabbard against Louis Dyson, doing business as Illini Airport. The defendant-appellee, Indemnity Insurance Company of North America, had in force two policies of insurance issued to Dyson, one an "Airport Liability Policy," the other an "Aircraft Liability Policy." The insurance company denied any indebtedness to Dyson, or the possession of any assets or claims due him. The District Court, after a hearing on the merits, filed a memorandum opinion containing its findings of fact and conclusions of law, and entered judgment discharging the garnishee and dismissing the garnishment proceedings. The garnishor appealed.

The findings of fact in the original action against Dyson was introduced in evidence without objection. The third paragraph of the findings of fact states:

"that on the 5th day of September, 1955, the defendant, Louis Dyson, doing business as Illini Airport, was the owner of and possessed a certain airplane known as a Globe Swift Model CC-LB Airplane, Identification Number 80621, which said plane was located at a certain airport known as Illini Airport. * * *"

The additional findings of fact disclose that Louis Dyson was the owner and operator of this airport; that he entered into negotiations to sell the Globe Swift aircraft to one Robert Schindler who was assured by Dyson that the aircraft was in good mechanical condition; that there was located near the Illini Airport certain wires and hazards which Dyson knew or should have known that the aircraft with its type of propeller would have difficulty in flying over and clearing the wires; that he directed Schindler to take off, he did and a crash occurred.

The findings of fact further disclose: "that said defendant, [Dyson], either by himself or by his agents and servants negligently and carelessly did one or more of the following acts or omitted to do said acts, namely:

"a. Negligently and carelessly directed the pilot of said airplane to take said airplane off the ground and into the air when a cross wind was blowing along the flight strip.

"b. Negligently and carelessly directed the pilot of said airplane to pilot said airplane into the air when it was too close to the outside edge of the flight strip, and so as to create a hazard.

"c. Negligently and carelessly furnished an airplane with a defective propeller or a propeller which was of a design not suited or proper for installation in said airplane.

"d. Negligently and carelessly operated said airport and operated said airport in violation of the provisions of the Statutes of Illinois and the Civil Aeronautics Regulations, and failed to make an inspection of said airplane as required, and did negligently and carelessly operate said airport with a hazard as is alleged herein, located thereby."

The findings further disclose that as a proximate result of the defendant's negligent acts the airplane crashed and Mrs. Littrall who was in the plane sustained injuries.

"Item 4" of the Aircraft Liability Policy recites:

"The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all of the terms of this policy having reference thereto."

Under "Item 5" of the policy, the description of the aircraft is:

---

1. Referred to herein as garnishor.

"All NC Licensed Aircraft Owned, Operated, Leased or Borrowed by the Named Insured."

Attached to this policy of insurance are "Endorsements" which included the following pertinent clauses:

"Endorsement #1.

"1. Automatic Attachment and Termination of Coverage: The coverages as indicated in the schedule of Coverages of this policy shall apply to all aircraft having an 'NC' certificate issued by the United States Civil Aeronautics Administration owned by the insured at the inception date of this policy and shall automatically apply to any similarly certificated aircraft acquired by the insured as owner during the policy period. This insurance shall terminate with respect to any aircraft disposed of on the date of sale of such aircraft or the surrender of the legal possession thereof by the insured or upon expiration of this policy, whichever may first occur.

"2. * * *

"3. Deposit Premium and Rates:

* * * * * * *

The rates for this policy are:

| Coverages | Rates |
| --- | --- |
| D & F | $.14 per day, each aircraft owned and operated. |

Coverage E not provided except as respects the planes described in Endorsement #2."

"Endorsement #2.

In consideration of premium to be determined by audit it is agreed that with respect to the following aircraft only:

1. Coverage E, Passenger Bodily Injury Liability is amended to read:
   $20,000.00 each person
   $60,000.00 each occurrence

2. The rate for the above extension shall be $.40 per day owned or operated and shall be applicable only to:

| Navion | ·...· |
| Piper Tri-Pacer | ι... |
| Piper Tri-Pacer | ·... |
| Piper PA 22 | ·..." |

Endorsements 3, 4, 5, 6, and 7 add and delete other planes but the Globe Swift aircraft involved in the accident was not listed or mentioned on any endorsement.

Coverages D, E and F are listed under the "Insuring Agreements" in the provisions of the policy and read in part as follows:

"Coverage D—Bodily Injury Liability excluding Passengers To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages, including damages for care and loss of services, because of bodily injury, sickness, disease or mental anguish, including death at any time resulting therefrom, sustained by any person or persons other than passengers as defined herein, arising out of the ownership, maintenance or use of the aircraft as described in this policy."

"Coverage E—Passenger Bodily Injury Liability To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages, including damages for care and loss of services, because of bodily injury, sickness, disease or mental anguish, including death at any time resulting therefrom, sustained by any passenger or passengers as defined herein, arising out of the ownership, maintenance or use of the aircraft as described in this policy."

"Coverage F—Property Damage Liability * * *"

The "Airport Liability Policy" in its pertinent provisions reads:

"Insuring Agreements"

"Coverage A—Bodily Injury Liability To pay on behalf of the insured, provided premium is charged under Coverage A in the declarations, all sums which the insured shall become legally obligated to pay

as damages, including damages for care and loss of services, because of bodily injury, sickness, disease or mental anguish including death at any time resulting therefrom, sustained by any person or persons and arising out of the ownership, maintenance or use of the airport premises described in the declarations and all operations which are necessary or incidental to the ownership, maintenance or use of said premises as an airport."

\* \* \* \* \* \*

"Exclusions"

"This policy does not apply:

\* \* \* \* \* \*

"(f) to bodily injury or death or injury to or destruction of property caused by or arising out of (1) the existence, maintenance or use of any aircraft owned by, hired by or for, or loaned to the insured or any aircraft in flight by or for the account of the insured \* \* \*."

The Insurer claims it is not liable to pay the judgment because the Globe Swift aircraft was not listed under Endorsement #2 of the aircraft policy and under the airport policy the Globe Swift aircraft was excluded by the exclusion clause which specifically excepted "bodily injury \* \* \* caused by or arising out of the \* \* \* use of any aircraft owned by \* \* \* the insured \* \* \*."

The purpose of construing a contract of insurance is to determine the intention of the parties. The contract of insurance must be construed as a whole. The contract consists of the policy and all endorsements attached thereto. Morris & Co. v. Rhode Island Ins. Co. of Providence, 1913, 181 Ill.App. 500.

"Contracts of insurance like other contracts must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary and popular sense." Yadro v. United States Fidelity & Guaranty Co., 1955, 4 Ill. App.2d 477, 478, 124 N.E.2d 370, 371.

If there is an ambiguity in the contract of insurance it must be construed in favor of the Insured. Midwest Dairy Products v. Ohio Ins. Co., 1937, 356 Ill. 389, 190 N.E. 702. Since the Insurer is invoking the exclusion clause the burden is upon the Insurer to show that the loss claimed is within the exclusion. Wilson v. National Automobile and Cas. Ins. Co., 1959, 22 Ill.App.2d 34, 159 N.E.2d 504; Caster v. Motor Ins. Corp., 1961, 28 Ill. App.2d 363, 171 N.E.2d 425.

The aircraft policy, based upon the proof, does not require the Insurer to pay this judgment. The policy expressly provides: "Coverage E [which covers passenger bodily injury] not provided except as respects the planes described in Endorsement #2." Endorsement #2 does not describe the Globe Swift aircraft which was involved in the accident. This endorsement required a payment of $.40 per day for each plane so listed. Item 4 of the policy plainly stated "coverages as are indicated by specific premium charge or charges." There is no proof of payment of this charge. There is no ambiguity in the manner in which this coverage is stated. From the language of the contract the parties did not intend to provide coverage for the Globe Swift aircraft, and the Court cannot make a new contract. Cf. Capps v. National Union Fire Ins. Co., 1925, 318 Ill. 350, 149 N.E. 247; Western & Southern Indemnity Co. v. Industrial Com., 1937, 366 Ill. 240, 8 N.E.2d 644.

Garnishor contends that the aircraft policy is a fleet policy as evidenced by the clause entitled "Automatic Attachment and Termination of Coverage."

Garnishor further contends that the Globe Swift aircraft is covered by the automatic coverage clause which reads:

"The coverages as indicated in the schedule of Coverages of this policy shall apply to all aircraft having an 'NC' certificate \* \* \*."

The policy must be read in its entirety. Konrad v. Hartford Accident & Indem-

nity Co., 1956, 11 Ill.App.2d 503, 137 N.E. 2d 855. The endorsements must be given effect. 22 I.L.P. Insurance § 147, p. 191. Hoffman v. Central Surety & Ins. Corp., 1938, 297 Ill.App. 371, 17 N.E.2d 619. The "Coverage E", liability for passenger bodily injury, is limited in Endorsement #2 to those aircraft listed. Other coverage as provided in "D" and "F" would be effective under the automatic coverage clause. Furthermore, Garnishor's interpretation would also increase the risk without payment of the additional premium provided, $.40 per day.

■ Counsel for Garnishor also contends that because "Coverage E" refers to passenger bodily injury liability, and since the Garnishor was in fact a guest in the plane she would not come within the exclusion. This argument is completely answered by the definition of passenger in the policy. "The word 'passenger' wherever used in this policy shall mean any person or persons while in * * * the aircraft for the purpose of * * * flight or attempted flight therein."

■ Garnishor further urges that the Insurer waived the exclusion of those planes not listed because on September 10, 1955, after the accident, the Insurer, through its authorized agent, signed an accident report and filed it with the Secretary of State pursuant to the provision of the Illinois Revised Statutes, 1959, Ch. 15½, § 22.42. In this report it was stated that Dyson had a policy covering liability insurance for the injuries sustained by the crash of the Globe Swift aircraft. The insurance policy number listed in this report was the number of the aircraft policy.

We conclude that since there was no coverage of the Globe Swift aircraft in the policy, this report to the Secretary of State in itself was insufficient to change the terms of the policy and provide additional coverage.

The next question is whether the Airport Liability Policy requires the Insurer to pay the Garnishor's judgment. Here again the policy without ambiguity specifically states:

"This policy does not apply: * * * to bodily injury * * * caused by or arising out of * * * use of any aircraft owned by * * * the insured or any aircraft in flight by or for the account of the insured."

The Globe Swift aircraft in which the Garnishor was riding was owned by the Insured according to the findings of fact. The exclusion clause in the policy expressly excluded the injuries received by the Garnishor while riding in this aircraft.

■ Garnishor contends that since the accident was caused by Insured negligently directing Schindler to take off, the use of the plane was not the cause of the accident and the exclusion clause was evaded. This might be true without the words *arising out of* the use of any aircraft owned by the Insured. It must be admitted that "arising out of" is a very broad phrase. Cf. Schmidt v. Utilities Ins. Co., 353 Mo. 213, 182 S.W.2d 181, 154 A.L.R. 1088. Although such negligence of the Insured proximately caused the crash and the injuries of the Garnishor it cannot be denied that the accident and injuries arose out of the use of the aircraft. Such construction as urged by the Garnishor is unreasonable and cannot be accepted under the wording of this policy. Cf. Underwriters at Lloyd's of London v. Cordova Airlines, 9 Cir., 1960, 283 F.2d 659; Bruce v. Lumbermen's Casualty Co., 4 Cir., 1955, 222 F.2d 642.

In addition to what has been already mentioned the policies read that the Insurer

"[a]grees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and *subject to* the limits of liability, *exclusions*, conditions and other terms of this policy." (Emphasis supplied.)

The aircraft policy had these additional words "to afford those of the following coverages as specified in the declarations." By this clause the two policies

explicitly state the intention of the parties to agree that the insurance afforded was "subject to * * * exclusions." The judgment was based upon injuries received under circumstances not included within the coverage of the policies. There is no ambiguity which authorizes this court to increase the coverage. Cf. Employer's Liability Assur. Corp. v. Maryland Casualty Co., 7 Cir., 1956, 230 F.2d 370.

We have adopted almost in its entirety the excellent opinion written by District Judge Casper Platt and affirm the order of the District Court discharging the Garnishee and dismissing the garnishment proceedings.

Judgment affirmed.