SAFECO INSURANCE COMPANY OF AMERICA, A CORPORATION, APPELLEE, v. HUSKER AVIATION, INC., A CORPORATION, AND MARY ANN KINNEY, PERSONAL REPRESENTATIVE OF THE ESTATE OF MAX W. KINNEY, DECEASED, APPELLANTS.

317 N.W.2d 745

Filed March 26, 1982. No. 44013.

John R. Timmermier and Michael A. Nelsen of Schmid, Ford, Mooney & Frederick, for appellant Kinney.

Frank Matthews of Matthews & Cannon, P.C., for appellant Husker.

C. L. Robinson of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, and HASTINGS, JJ., and BRODKEY, J., Retired.

KRIVOSHA, C.J.

This is a declaratory judgment action brought by Safeco Insurance Company of America (Safeco) to determine the rights of the parties under two policies issued by it to Husker Aviation, Inc. (Husker), as its insured. The appellant Mary Ann Kinney (Kinney), as personal representative of the estate of Max W. Kinney, deceased, was joined as a necessary party defendant. Both Safeco and Kinney filed motions for summary judgment, and after a hearing in which evidence was adduced the trial court sustained the motion of Safeco for summary judgment

and entered a declaratory judgment determining that neither of Safeco's policies afforded liability coverage for the tort action by Kinney against Husker, or obligated Safeco to defend such action. We affirm.

On June 4, 1978, Dr. Max W. Kinney was piloting an aircraft provided to him by Husker. The plane crashed and Dr. Kinney was killed. At the time of the crash, Safeco had issued to Husker two insurance policies. One policy was an aircraft hull and liability policy and the other policy was an airport fixed base operator's liability policy.

On July 17, 1979, Kinney, as personal representative for her deceased husband, filed suit for damages against Husker. Basically, her petition alleged that the decedent was involved in an accident which resulted in his death due to certain acts of negligence on the part of Husker. Essentially, Kinney contends that Husker performed certain acts of negligence with respect to the operation of its pilot training school which were the proximate cause of decedent's accident and resulting death. Under the provisions of the aircraft hull and liability policy, only the aircraft described in the declaration of the policy was covered by the policy. The aircraft being operated by Dr. Kinney was a Piper leased from a company called Alpha Flying Service, Inc. The lease agreement makes it clear that Husker was to obtain the insurance coverage for the Piper and simply failed through inadvertence to do so. All of the parties concede that the aircraft being operated by the decedent at the time of the crash was not described in the policy and that the policy did not afford any coverage for the accident.

While Husker and Kinney concede that the aircraft hull and liability policy does not afford a right of defense or coverage due to the fact that Husker failed to list the Piper as one of the aircrafts covered by the policy, they maintain that there is coverage

under the airport fixed base operator's liability policy because the policy, by inference, provides coverage for the operation of a pilot training school. Whether that is the case or not need not be decided here. The airport fixed base operator's policy issued by Safeco specifically contained an exclusion which read in part: "This insurance *does not apply*: . . . (b) to bodily injury or property damage arising out of the ownership, maintenance, *operation, use,* loading or unloading of (1) any automobile or *aircraft* owned or operated by or rented or loaned to any insured . . . ." (Emphasis supplied.) The language of the policy is clear and unambiguous. It specifically provides, as noted, that there is no coverage for bodily injury arising out of the operation or use of an aircraft rented to the insured.

Husker and Kinney seek to avoid the exclusion of the policy by maintaining that the injury in the instant case did not arise out of the operation of an aircraft but, rather, by reason of Husker's negligence in training the decedent and permitting him to fly the aircraft at a time when he was not qualified to do so. While the argument is ingenious, it cannot overcome simple facts of the matter. Regardless of what may have been a contributing cause of the decedent's death, it is clear beyond question that the bodily injury resulting in his death was directly related to the operation of an aircraft leased to Husker. Whatever else may have been a cause of the decedent's ultimate death, it is clear from the record here that if he had not been operating the aircraft at the time it crashed, he would not have been killed. That is specifically what the policy excluded.

Our obligation in interpreting an insurance policy is clear. In *Adolf v. Union Nat. Life Ins. Co.,* 170 Neb. 38, 44, 101 N.W.2d 504, 508-09 (1960), we said: "Under the law of this state the acquiring of insurance has always been a matter of contract. Insurance is a contract by which one party assumes speci-

fied risks of the other party for a consideration, and promises to pay him or his beneficiary an ascertainable sum of money on the happening of a specified contingency. It is true, however, that an insurance contract will be construed against the insurance company when the contract or policy is indefinite or ambiguous because it drafted the contract or policy and is responsible for any indefiniteness or ambiguity therein. But where the contract is plain and unambiguous in its meaning the contract will be enforced according to its terms. Unless this be the law, the attaching of liability on an insurance company, contrary to the plain meaning of the contract, would be nothing less than a rewriting of the liability provisions of the contract. It appears to us that it would be a dangerous innovation of contract law to hold that one is not bound by what he signs, and that that which he fails to read or understand should be read out of the contract."

And in *Koehn v. Union Fire Ins. Co.,* 152 Neb. 254, 260-61, 40 N.W.2d 874, 878 (1950), we said: "An insurance policy should be construed as any other contract to give effect to the intent of the parties at the time it was made. The language should be considered not in accordance with what the insurer intended the words to mean, but what a reasonable person in the position of insured would have understood them to mean. If the contract was prepared by the insurer and contains provisions reasonably subject to different interpretations, one favorable to the insurer and one advantageous to the insured, the one favorable to the latter will be adopted. There is, however, a difference between a favorable construction and a favorable finding for the insured. The former does not mean imposing upon the insurer a gratuitous obligation not justified by the usual meaning of the words employed. In giving effect to this principle of law, it is imperative that the contract made by the parties shall be respected and that a

new contract is not interpolated by construction. Construction ought not to be employed to make a plain agreement ambiguous for the purpose of interpreting it in favor of the insured. The policy should be given meaning and effect according to the sense of the terms which the parties have used, and if they are clear they should be taken in their plain and ordinary sense.''

Husker and Kinney ask us to ignore the plain language of the policy which excludes injury caused by the operation of an aircraft. We cannot do that.

In *Stone v. Physicians Casualty Ass'n,* 130 Neb. 769, 773, 266 N.W. 605, 607 (1936), we noted: '' 'It does not follow, however, that the terms of an insurance policy may be distorted from their natural meaning, or that the agreed liability of the insurer should be enlarged into one which only a new contract could have imposed, nor, indeed, that a court should indulge in scholastic subtleties to extend the rights of the insured.' ''

And in *Lonsdale v. Union Ins. Co.,* 167 Neb. 56, 58-59, 91 N.W.2d 245, 248 (1958), we said: '' '* * * the parties to an insurance contract may make the contract in any legal form they desire, and in the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability and to impose whatever conditions they please upon their obligations, not inconsistent with public policy. If plainly expressed, insurers are entitled to have such exceptions and limitations construed and enforced as expressed.' ''

We are not permitted to create an ambiguity simply to afford coverage where a clear reading of the policy would otherwise deny coverage.

In *Sampson v. State Farm Mut. Ins. Co.,* 205 Neb. 164, 167, 286 N.W.2d 746, 748-49 (1980), we recently said: ''The language of the policy is not ambiguous in any respect, nor was the language of the offer to reinstate. This court has held that contracts of

insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in plain, ordinary, and popular sense. Where the language is plain and unambiguous, the court will not read an ambiguity into the language in order to construe it against the one who prepared the contract. Cordes v. Prudential Ins. Co., 181 Neb. 794, 150 N.W.2d 905."

And in *Hartford Acc. & Ind. Co. v. Olson Bros., Inc.,* 187 Neb. 179, 187, 188 N.W.2d 699, 704 (1971), we stated: "We are not unmindful of the principles that ambiguities must be construed against the insurer and if a policy is fairly susceptible of two constructions and one affords coverage and the other does not then the construction which affords coverage must be adopted. There is no ambiguity in the policy. *Complexity is not the same as ambiguity.*" (Emphasis supplied.) In the instant case we conclude that while there is, undoubtedly, complexity involved in the policy provisions, there is no ambiguity. An insurance policy is a contract between the insurance company and the insured. As such, the insurance company has the right to limit its liability by including those limitations in the policy definitions. If those definitions are clearly stated and unambiguous, the insurance company is entitled to have those terms enforced.

Obviously, nothing we say here in any way affects Kinney's right to sue Husker for whatever negligence Kinney may prove, and, indeed, if the decedent's inability to properly operate the aircraft was due to Husker's negligence in training and permitting the decedent to operate the aircraft, it may be liable. We do not pass on that question. The only question we pass upon is the only question raised by this case. Must Safeco defend Husker against the suit brought by Kinney, and if Husker is liable to

Kinney, must Safeco pay the damages? That must be answered in the negative due to the language of the policy excluding such coverage.

A case almost exactly on point is the case of *Littrall v. Indemnity Insurance Co. of North America,* 300 F.2d 340 (7th Cir. 1962). The *Littrall* case involved an accident similar to the case involved herein and concerned a policy with similar coverage. In finding that the coverage did not apply, the court said at 344: "The next question is whether the Airport Liability Policy requires the Insurer to pay the Garnishor's judgment. Here again the policy without ambiguity specifically states:

" 'This policy does not apply: * * * to bodily injury * * * caused by or arising out of * * * use of any aircraft owned by * * the insured or any aircraft in flight by or for the account of the insured.' . . .

"Garnishor contends that since the accident was caused by Insured negligently directing Schindler to take off, the use of the plane was not the cause of the accident and the exclusion clause was evaded. This might be true without the words *arising out of* the use of any aircraft owned by the Insured. It must be admitted that 'arising out of' is a very broad phrase. Cf. Schmidt v. Utilities Ins. Co., 353 Mo. 213, 182 S.W.2d 181, 154 A.L.R. 1088. Although such negligence of the Insured proximately caused the crash and the injuries of the Garnishor it cannot be denied that the accident and injuries arose out of the use of the aircraft. Such construction as urged by the Garnishor is unreasonable and cannot be accepted under the wording of this policy. Cf. Underwriters at Lloyd's of London v. Cordova Airlines, 9 Cir., 1960, 283 F.2d 659; Bruce v. Lumbermen's Casualty Co., 4 Cir., 1955, 222 F.2d 642."

The trial court was correct in its interpretation of the fixed base policy and the judgment is affirmed.

AFFIRMED.

CAPORALE, J., disqualified.