PATRICK D. O'TOOLE ET AL., PLAINTIFFS, V. CARL D. BROWN
ET AL., DEFENDANTS.

422 N.W.2d 350

Filed April 21, 1988.   No. 87-694.

Allan J. Eurek of Pierson, Ackerman, Fitchett, Akin & Hunzeker, for plaintiffs.

Anne E. Winner of Bruckner, O'Gara, Keating, Sievers & Hendry, P.C., for garnishee.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

The U.S. District Court for the District of Nebraska has requested this court to answer questions of state law, pursuant to the provisions of Neb. Rev. Stat. § 24-219 (Reissue 1985), which provides that this court may answer questions of law certified to it by the U.S. District Court if there are questions of Nebraska law which may be determinative of the cause then pending in the certifying court and there is no controlling precedent in the decisions of this court.

The "Background Statement" submitted to this court by the U.S. District Court sets out, in part, the following:

On April 2, 1986, Patrick D. O'Toole and Linda S. O'Toole commenced suit in the United States District Court for the District of Nebraska seeking damages against the defendants for injuries and property damage sustained in an automobile accident that occurred on June 12, 1983.

On October 15, 1986, the parties filed a "Stipulation for Judgment". The stipulation provides, in relevant part, that: (1) the defendants consent to the entry of judgment in favor of the plaintiffs and against the defendants, jointly and severally, in the amount of $30,000.00, (2) the plaintiffs agree not to execute on the defendants' real or personal property with the exception of any

indemnification rights of the defendants that exist in an insurance policy issued by American Family Mutual Insurance Company, (3) the defendants agree that each allegation within the complaint is true, (4) both parties represent that they did not engage in fraud or collusion in regard to the terms of the agreement, and (5) the parties agree that costs shall be taxed against the plaintiffs. Accordingly, this federal court entered judgment against the defendants, jointly and severally, in the amount of $30,000.00, with costs taxed to the plaintiffs, on October 22, 1986.

On November 7, 1986, the plaintiffs filed an affidavit for garnishee summons and a praecipe for the issuance of the garnishee summons. A second affidavit and praecipe were filed on November 17, 1986. On November 10, 1986, the clerk for the United States District Court for the District of Nebraska issued a garnishee summons and order. The summons and order directed the sheriff of Douglas County, Nebraska, to serve the summons and attached interrogatories on American Family Mutual Insurance Company (garnishee).

In their cross-motions for summary judgment the plaintiffs and the garnishee agree that no material issues of fact exist. The allegations within the complaint, admitted as true by the defendants, indicate that on June 12, 1983, the plaintiffs were driving northbound on South Coddington Street in Lancaster County, Nebraska. Approximately one-half mile south of West Burnham Street,

"a group of horses (owned or controlled by the defendants) entered the roadway in front of Plaintiffs' automobile, forcing the Plaintiffs' automobile to leave the roadway and strike the bank of a creek which crossed under the roadway."

The defendants were negligent in the following respects:

"a. In allowing the horses to run free and in a manner in which they could enter a public roadway.

b. In failing to take necessary and prudent steps to

prevent the horses from entering a public roadway.

c. In failing to properly supervise and remove the horses from the public roadway.

d. In failing to provide or failing to properly maintain a fenced enclosure to prevent the horses from entering a public roadway."

Additionally, it is uncontroverted that at the time of the automobile accident a "Farm-Ranch Policy", #26P 80004, issued by the garnishee in favor of the defendants and Etha Harless was in effect. Under "Liability Coverages - Section II" appears "Coverage B - Personal Liability Coverage". Coverage B provides, in pertinent part, that:

"We will pay, up to our limit of liability, all sums for which any insured is legally liable because of bodily injury or property damage covered by this policy."

Also, in effect at that time was a "Special Restrictive Endorsement" to the policy. The restrictive endorsement states that:

"It is hereby agreed and understood that this policy is restricted in the following aspects: Coverage under Section II does not apply to any property damage, bodily injury, sickness or disease, including death resulting therefrom, arising out of the actions of any horses, owned or in the custody of the named insured."

It is undisputed that the garnishee was notified of the pending suit, afforded an opportunity to defend the suit, and requested to indemnify the defendants against any loss occasioned by the suit. Since the garnishee concluded that liability coverage was excluded under the terms of the restrictive endorsement, the garnishee did not defend the suit.

After setting out the foregoing "Background Statement," U.S. District Court certifies three questions:

1. In the absence of the word "all", i.e., "All [c]overage under Section II does not apply to any property damage, bodily injury, sickness or disease, including death resulting therefrom, arising out of the actions of any horses, owned or in the custody of the named insured"

from the restrictive endorsement, is it ambiguous whether the restrictive endorsement applies to Coverage B since Coverages A, B and F require legal liability and Coverages C, G, H, and J do not require such legal liability?

2. Is the phrase "arising out of the actions of any horses" fairly susceptible to more than one interpretation, and if so, is the restrictive endorsement ambiguous?

3. If the restrictive endorsement is unambiguous, does the language "arising out of the actions of horses" require more than the existence of a causal connection between the actions of the horses and the accident or injury for the accident or injury to be subject to the terms of the restrictive agreement?

The first question certified to this court asks whether the absence of the word "all" in the language of the restrictive endorsement creates an ambiguity with respect to whether the restrictive endorsement applies to coverage B, since it requires legal liability.

To answer in the affirmative, we would have to ignore the clear, plain, and unambiguous language of the restrictive endorsement. Plaintiffs seek an answer which would create ambiguity where none exists. The restrictive endorsement expressly excludes "property damage [and] bodily injury . . . arising out of the actions of any horses . . . ." The language of the restrictive endorsement is in no way further qualified. It does not say "no coverage for injuries arising out of the actions of any horses except where there is legal liability." We see no reason why this court should add an additional qualification to the plain and unambiguous language of the restrictive endorsement.

In *Waylett v. United Servs. Auto. Assn.*, 224 Neb. 741, 745, 401 N.W.2d 160, 163 (1987), we observed:

"It is true that if an insurance policy is ambiguous, it will be construed in favor of the insured. However, an ambiguity exists only when the policy can be interpreted to have two or more reasonable meanings. *Denis v. Woodmen Acc. & Life Co.*, 214 Neb. 495, 334 N.W.2d 463 (1983). An ambiguity will not be read into policy language which is plain and unambiguous in order to construe it

against the preparer of the contract. [Quoting *Lumbard v. Western Fire Ins. Co.*, 221 Neb. 804, 381 N.W.2d 117 (1986).]"

We hold that the absence of the word "all" from the restrictive endorsement does not create ambiguity with respect to the requirement of legal liability. The answer to the first certified question is No.

The second question certified to this court asks whether the phrase "arising out of the actions of any horses" is susceptible to more than one interpretation, and, if so, is the restrictive endorsement ambiguous? We hold that on the facts of this case, the phrase is not ambiguous and therefore is not susceptible to more than one interpretation.

The restrictive endorsement is drafted in plain, ordinary language. We will not attribute something other than a plain, ordinary meaning. In *Safeco Ins. Co. of America v. Husker Aviation, Inc.*, 211 Neb. 21, 26, 317 N.W.2d 745, 748 (1982), we quoted from *Stone v. Physicians Casualty Ass'n*, 130 Neb. 769, 266 N.W. 605 (1936), as follows:

"'It does not follow, however, that the terms of an insurance policy may be distorted from their natural meaning, or that the agreed liability of the insurer should be enlarged into one which only a new contract could have imposed, nor, indeed, that a court should indulge in scholastic subtleties to extend the rights of the insured.'"

The answer to the second question is that the phrase "arising out of the actions of any horses" is not ambiguous.

The third question asks whether the language of the restrictive endorsement requires more than the existence of a causal connection between the actions of the horses and the accident or injury. The restrictive endorsement uses clear and unambiguous language to specifically exclude injuries "arising out of the actions of any horses."

Where the insureds' loss falls within specific exceptions contained in the policy, the court must apply the exception. *Roth v. Farmers Mut. Ins. Co.*, 220 Neb. 612, 371 N.W.2d 289 (1985); *Thos v. Employers Mutual Cas. Co.*, 215 Neb. 424, 338 N.W.2d 784 (1983).

Recognizing that we are not here deciding an actual case but,

rather, rendering an opinion as to the theoretical meaning of a phrase in an insurance policy under facts recited to us, we do not interpret the language "arising out of" to require more than a causal relationship. Plaintiffs' injuries fall within the exception, and therefore it is this court's opinion that the restrictive endorsement is effective without more than a causal relationship.

Again, we cannot and will not create ambiguity where none exists. In *Safeco Ins. Co. of America v. Husker Aviation, Inc., supra* at 26, 317 N.W.2d at 748-49, quoting from *Lonsdale v. Union Ins. Co.*, 167 Neb. 56, 91 N.W.2d 245 (1958), we stated:

> " '[T]he parties to an insurance contract may make the contract in any legal form they desire, and . . . insurance companies have the same right as individuals to limit their liability and to impose whatever conditions they please upon their obligations, not inconsistent with public policy. If plainly expressed, insurers are entitled to have such exceptions and limitations construed and enforced as expressed.' "

Defendants and garnishee, American Family Mutual Insurance Company, contractually agreed that defendants would bear the risk of any injuries arising out of the actions of horses. In the circumstances presented to us, the phrase "arising out of" is unambiguous. It would be inappropriate for this court to interpret such language as to reassign the risk of loss here to garnishee. To hold that more than a causal connection is required, we would have to attribute something other than the plain and ordinary meaning to the words "arising out of." We apply the plain and ordinary meaning and hold that the phrase "arising out of" does not require more than a causal connection between the accident and the injury. The answer to the third certified question is that the language "arising out of the actions of any horses" does not require more than the existence of a causal connection between the actions of the horses and the accident or injury for the accident or injury to be subject to the terms of the restrictive agreement.

JUDGMENT ENTERED.

HASTINGS, C.J., not participating.