CORNHUSKER CASUALTY COMPANY, APPELLANT, V.
FARMERS MUTUAL INSURANCE COMPANY
OF NEBRASKA, APPELLEE.

680 N.W.2d 595

Filed June 10, 2004.    No. S-03-336.

Thomas J. Culhane and Patrick R. Guinan, of Erickson & Sederstrom, P.C., for appellant.

Thomas A. Grennan, Alison L. McGinn, and Thomas E. Morrow, Jr., of Gross & Welch, P.C., for appellee.

WRIGHT, CONNOLLY, GERRARD, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.
## NATURE OF CASE
Cornhusker Casualty Company (Cornhusker) filed a petition in the district court for Douglas County against Farmers Mutual Insurance Company of Nebraska (Farmers). Pursuant to a garage policy issued to the estate of Leo J. Bongers (the Estate) by Cornhusker and a farm policy issued to the Estate by Farmers, Cornhusker and Farmers had each paid half of a judgment which had been entered against the Estate. Cornhusker claimed it was not liable under its policy, and it therefore sought reimbursement from Farmers for the half of the judgment Cornhusker had paid as well as for all the moneys Cornhusker had expended in defending the Estate. Farmers filed a counterclaim asserting that Cornhusker's coverage was primary and that therefore Cornhusker was liable for the entire judgment. Farmers sought reimbursement for the half of the judgment that it had paid.

The parties submitted the case to the district court on stipulated evidence. The court ruled against Cornhusker on its claim and dismissed Cornhusker's action. The court ruled in favor of Farmers on its counterclaim and entered a judgment against Cornhusker equal to the portion of the judgment against the Estate that Farmers had paid. Cornhusker appeals. We reverse, and remand to the district court with directions to enter judgment in Cornhusker's favor on its claim and to dismiss Farmers' counterclaim.

## STATEMENT OF FACTS
The Estate was insured under a garage policy issued by Cornhusker and under a farm policy issued by Farmers. The Estate and other defendants were sued by Joseph A. Haag after

Haag was injured in an accident while attending an auction on farm property owned by the Estate. The trial court in Haag's action entered judgment on a jury verdict in the amount of $600,000 in favor of Haag and against the Estate and the other defendants. The judgment was affirmed by this court in *Haag v. Bongers*, 256 Neb. 170, 589 N.W.2d 318 (1999). The facts of Haag's action are set forth in greater detail in *Haag v. Bongers, supra*, and will be repeated here only to the extent necessary to resolve the issues in this appeal.

In the present case, Cornhusker and Farmers submitted into evidence stipulated facts including the following paragraphs regarding the underlying facts of Haag's action:

3. On or about January 30, 1993, an auction was conducted upon the premises owned by the Estate of Leo Bongers in David City, Butler County, Nebraska. The auction was held by Alfred M. Bongers and Delores D. Kuhl in their capacity as personal representatives of the Estate of Leo J. Bongers. The estate employed Dolan & Bauer-Moravec to conduct the auction for which admission was charged. The auction was for the purpose of selling off, among other things, approximately 120 automobiles owned by the Bongers' [sic] Estate.

4. The vehicles which were to be auctioned were driven or towed, if necessary, into a Quonset building on the property by volunteers or employees of Dolan & Bauer-Moravec. An alley way made of bales of hay were [sic] set up through the middle of the auction barn through which the vehicles were driven or towed. At one point during the auction, the auctioneers reminded the bidders and spectators to stay behind the hay bales because some of the bidders and spectators were not behind the hay bales. It is unknown whether Joseph A. Haag, was behind or in front of the hay bales at the time of the accident. There were no other barricades, ropes or fences which separated the bidders and spectators from the area where the vehicles were being auctioned. The auctioneers nationally advertised the auction and estimated that approximately 700 people would attend. However, as many as 1250 people actually attended the auction. It is unknown how many bidders and

spectators were actually in the Quonset at the time of the accident in question.

5. During the course of the auction, a 1950 Studebaker Truck was brought up to the Quonset building to be sold. The truck was towed into the Quonset building by a 1951 M International Farmall tractor with a rope that was attached to a ball hitch which was attached to the tow bar of the tractor. The threaded shaft of the ball hitch was inserted through in the tow bar and was tightened with a nut. Following the sale of the truck, the tractor attempted to tow the truck out of the building. As the tow rope tightened, the ball hitch came loose from the tow bar of the tractor. Joseph A. Haag was struck in the head by the ball hitch and suffered injuries.

6. The ball hitch and tow ropes were purchased by the auctioneers hired by the Bongers' [sic] Estate to conduct the auction. The ball hitch and tow rope were attached to the tractor and cars by volunteers that were assisting with the auction.

Haag sued the Estate and other defendants, including the auctioneers and the manufacturer of the ball hitch. The Estate tendered the defense of the lawsuit to both Cornhusker and Farmers. Farmers admitted its policy provided coverage for the claim and accepted coverage without reservation. However, Farmers declined to defend the Estate, claiming that the Cornhusker policy also provided coverage and was primary to the excess coverage provided under the Farmers policy.

Cornhusker undertook the defense of Haag's claim against the Estate but sent a letter with the title "<u>Reservation of Rights</u>" to the Estate. In the letter, Cornhusker stated:

It would appear at this point that the vehicles being used in the towing operation which caused the injury are over 30 years old and would be excluded off of our policy. Any bodily injury resulting from the ownership, maintenance, or use of vehicles over 30 years old would not be covered.

Haag's lawsuit went to trial and was submitted to a jury on September 15, 1997. The jury was instructed, inter alia, that Haag claimed that the Estate was liable under the doctrine of respondeat superior and vicarious liability for the negligence of individuals who (1) failed to use the ball hitch in the manner for

which it was intended; (2) placed the shank or screw of the ball hitch in a drawbar hole which was too large, thus causing the hitch to tilt and place unreasonable stresses on the integrity of the hitch; (3) placed the hitch in a drawbar which was too thick for the hitch, thus preventing the lock washer and nut of the hitch to be fully engaged; (4) failed to fully engage the nut with the screw of the hitch assembly; and (5) attached a synthetic towrope to the hitch which created an unreasonable risk of harm to Haag and the occupants of the building because it stored energy and acted like a slingshot when the hitch failed. The jury was also instructed that Haag claimed that the Estate was independently negligent for (1) failing to correct the manner in which ball hitches were being used to tow vehicles into the crowded sale barn when it knew, or in the exercise of reasonable care should have known, that the manner in which ball hitches were being used was unreasonably dangerous and created an unreasonable risk of harm to Haag and other occupants of the sale barn; (2) failing to limit the number of people in the sale barn so that the bidders could be kept at a safe distance from the towing process; and (3) failing to warn Haag and the other business visitors in the sale barn that vehicles were being towed in an unreasonably dangerous manner, when it knew or should have known that vehicles were being towed in an unreasonably dangerous manner.

On September 16, 1997, the jury returned a general verdict in favor of Haag and against all the defendants, including the Estate, and assessed damages in the amount of $600,000. The verdict was accepted, and the trial court entered judgment against all defendants for $600,000 plus costs. The judgment was affirmed by this court in *Haag v. Bongers*, 256 Neb. 170, 589 N.W.2d 318 (1999).

In letters dated April 15, 1999, Cornhusker informed the personal representatives of the Estate that it was denying coverage for the Haag judgment because Cornhusker asserted that the accident "occurred as a result of a tractor over 30 years old towing another antique vehicle that was similarly over 30 years old." Cornhusker stated that coverage was excluded under an endorsement which read as follows:

> This insurance does not apply to Bodily Injury or Property Damage resulting from the ownership, maintenance, or use

of tow trucks, vehicles over 30 years old, tank trucks, tank trailers and haulaways whether connected or not connected to non-owned or covered "autos" you own. Physical Damage Coverage does not apply to vehicles over 30 years old.

Cornhusker further asserted in the letter that Farmers had agreed that its policy covered the loss and that therefore "the estate's portion of the judgment should be paid by Farmers Mutual of Nebraska." Despite the denial of coverage, Cornhusker was obligated to pay the judgment to Haag under the terms of a supersedeas bond. Cornhusker and Farmers each paid $166,741.71 to Haag to satisfy the Estate's share of the judgment. Other defendants paid the rest of the judgment to Haag.

On September 3, 1999, Cornhusker filed a petition against Farmers seeking a judgment in the amount of $166,741.71 for the portion of the judgment Cornhusker paid to Haag and in the amount of $98,245.65 for costs Cornhusker incurred in defending the Estate against Haag's claims. Cornhusker alleged that the policy it issued to the Estate did not provide coverage for the claims asserted by Haag because Haag's injuries resulted from the Estate's ownership, maintenance, or use of two trucks or vehicles more than 30 years old. Cornhusker further alleged that the policy Farmers issued to the Estate did provide coverage and that therefore Farmers was liable for all of the Estate's share of the judgment as well as the entire costs of defending the Estate.

Farmers answered and in effect alleged that Cornhusker's policy provided coverage for Haag's claims against the Estate. Farmers further alleged that its coverage was excess to that of Cornhusker and that Cornhusker's coverage was primary. Farmers therefore filed a counterclaim seeking reimbursement of the amount it had paid on the judgment against the Estate.

The matter proceeded to a bench trial on April 16, 2001, and was tried on stipulated facts, the evidence from the *Haag v. Bongers* trial, and other evidence, including Cornhusker's correspondence with the Estate. On November 13, the district court entered an order dismissing Cornhusker's petition. The court found that "the cause of the accident was the faulty ball hitch." The court also stated that the use of the tractor and the ownership of the Studebaker truck were "only an incident of the accident," and the court therefore found that the exclusion in the Cornhusker policy

did not apply. The court also found that the sale of cars at the auction was part of "garage operations" as provided in the policy, thereby invoking coverage under the policy. The court entered judgment in favor of Farmers and dismissed Cornhusker's petition.

Cornhusker attempted to appeal the November 13, 2001, order. However, this court dismissed the appeal for lack of a final order because the district court had failed to rule on Farmers' counterclaim. *Cornhusker Casualty Co. v. Farmers Mutual Ins. Co.*, 263 Neb. xxii (No. S-01-1288 (Apr. 17, 2002)). The district court on March 17, 2003, entered an order granting judgment against Cornhusker in the amount it had paid plus costs on Farmers' counterclaim. Cornhusker appeals.

## ASSIGNMENTS OF ERROR

Cornhusker asserts that the district court erred in (1) finding that the exclusion endorsement did not exclude coverage for Haag's claims against the Estate and that the endorsement did not apply to "garage operations"; (2) finding that Cornhusker's policy was primary and that Farmers' policy provided excess coverage; (3) finding that the cause of the accident was the faulty ball hitch and that the use of the tractor and the Studebaker truck, which were both over 30 years old, was only incidental to the accident; (4) failing to find that Farmers was liable for the judgment and defense costs and failing to enter judgment against Farmers on Cornhusker's claim; and (5) failing to enter judgment in Cornhusker's favor on Farmers' counterclaim and failing to dismiss Farmers' counterclaim.

## STANDARD OF REVIEW

■ The interpretation of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the lower court. *Guerrier v. Mid-Century Ins. Co.*, 266 Neb. 150, 663 N.W.2d 131 (2003).

## ANALYSIS

*Applicability of Exclusion.*

We first consider Cornhusker's argument that the district court erred in determining that the exclusion in the Cornhusker policy for damages resulting from the ownership, maintenance, or use of

vehicles over 30 years old did not exclude coverage for Haag's claims against the Estate. Our resolution of this argument controls the outcome of this appeal. Contrary to the district court's order, we conclude as a matter of law that the exclusion applied to Haag's claims. Accordingly, we determine that the district court erred in holding in Farmers' favor on both Cornhusker's claim and on Farmers' counterclaim.

On appeal, Farmers contends that the exclusion at issue applied only to certain types of coverage under the Cornhusker policy and that it did not apply to the garage operations coverage. We reject this contention. The exclusion at issue was contained in an endorsement to the policy and expressly stated that it modified the insurance provided under the garage coverage form. The heading on the exclusion alerted the insured to its scope by stating in a banner across the top of the page: "THIS ENDORSEMENT CHANGES THE POLICY." The endorsement was located on a separate page following the descriptions of all the various types of coverage provided under the policy. There is no language in the exclusion which would indicate that it might apply to only certain types of coverage. We further note that there is policy language within the descriptions of specific types of coverage which provides for certain types of exclusions which are unique to those specific coverages. The placement of the exclusion at issue in the policy and the language of the exclusion indicate that the exclusion applied to the coverage provided under the entire garage policy.

■ In interpreting limitations and exclusions in an insurance policy, this court has stated:

> An insurance policy is a contract between the insurance company and the insured. As such, the insurance company has the right to limit its liability by including those limitations in the policy definitions. If those definitions are clearly stated and unambiguous, the insurance company is entitled to have those terms enforced.

*Safeco Ins. Co. of America v. Husker Aviation, Inc.*, 211 Neb. 21, 27, 317 N.W.2d 745, 749 (1982). In *Safeco Ins. Co. of America*, we recognized that an insurance contract will be construed against the insurer when the policy is indefinite or ambiguous because the insurer drafted the contract; however, we also recognized that

"[w]e are not permitted to create an ambiguity simply to afford coverage where a clear reading of the policy would otherwise deny coverage." 211 Neb. at 26, 317 N.W.2d at 749.

The Cornhusker policy in this case excludes coverage for damages "resulting from the ownership, maintenance, or use of[, inter alia,] vehicles over 30 years old." This exclusion is not indefinite or ambiguous. We find the exclusion to be applicable to Haag's claims.

Haag's injuries were caused when a faulty ball hitch came loose while the hitch was being used to tow a vehicle which was owned by the Estate and was over 30 years old. The court specifically found that "the cause of the accident was the faulty ball hitch." In its order, the district court also noted that "the injuries sustained by Haag occurred as the tractor towing the Studebaker with the rope caused the ball hitch to come loose." The district court concluded that the exclusion did not apply and entered orders in favor of Farmers. Given the facts and the Cornhusker policy language, the district court's orders are in error.

In this case, the district court's finding that the faulty ball hitch caused the accident cannot be separated from the additional finding that the accident occurred while the ball hitch was being used to tow the 1950 Studebaker truck, a vehicle over 30 years old which was owned by the Estate. Even though the faulty ball hitch was the specific cause, the fact remains that the damages resulted from the towing of the 1950 Studebaker truck. A faulty ball hitch without an application is unlikely to cause harm. In this case, the towing was an incident of the Estate's ownership of the vehicle, and therefore, any liability the Estate had for the damages to Haag "resulted from" the Estate's ownership of a vehicle over 30 years old. Although it is possible that the faulty ball hitch could have been used to tow a vehicle that was not over 30 years old, in this particular accident, the Estate's liability resulted from its ownership of a vehicle that was in fact over 30 years old. In its policy, Cornhusker specifically excluded coverage for any damages resulting from the Estate's ownership of vehicles over 30 years old, and therefore the particular injuries to Haag in this case were within a set of risks that the policy excluded from coverage, and the district court's decision to the contrary was error. We note that because we conclude

that the exclusion applied, we need not consider whether Haag's claim would have been covered under the garage policy absent the exclusion.

Farmers argues that the present case should be analyzed pursuant to the "concurrent cause doctrine" used in other jurisdictions. This court has not specifically adopted the concurrent cause doctrine in this type of case. In cases where insurance policies cover losses caused by one risk while excluding losses caused by another risk, courts in other jurisdictions have alternatively used a "concurrent cause rule" or an "efficient proximate cause rule" to resolve coverage issues. See 7 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d §§ 101:55 to 101:57 at 101-148 to 101-153 (1997). The concurrent cause rule provides that "coverage should be allowed whenever two or more causes do appreciably contribute to the loss, and at least one of the causes is an included risk under the policy," while the efficient proximate cause rule allows recovery for a loss "caused by a combination of a covered and an excluded risk only if the covered risk was the efficient proximate cause of the loss, meaning that the covered risk set the other causes in motion which, in an unbroken sequence, produced the result for which recovery is sought." *Id.*, § 101:57 at 101-152 to 101-153.

We note that when applying both the concurrent cause rule and the efficient proximate cause rule, it is essential to recognize that "[t]he initial task . . . is determining whether there really are two causes, or merely one cause being given different labels." *Id.*, § 101:55 at 101-149. Although the concurrent cause rule or the efficient proximate cause rule may be applicable "where two or more distinct actions, events or forces combined to create the damage," such analysis has no application when "the evidence shows the loss was in fact occasioned by only a single cause, albeit one susceptible to various characterizations." *Chadwick v. Fire Ins. Exchange*, 17 Cal. App. 4th 1112, 1117, 21 Cal. Rptr. 2d 871, 874 (1993). The court in *Chadwick* stated, "An insured may not avoid a contractual exclusion merely by affixing an additional label or separate characterization to the act or event causing the loss." *Id.* See, also, *Austin Mut. Ins. Co. v. Klande*, 563 N.W.2d 282 (Minn. App. 1997) (for concurrent cause rule to apply, there must be divisible concurrent causes and question

is whether causes could have operated independently of one another to bring about loss).

Given the district court's finding of fact that the cause of Haag's injuries was the faulty ball hitch and in light of the fact that the use of the ball hitch was an inseparable part of the accident that resulted from the towing of the Estate's 1950 Studebaker truck, we determine that Haag's injuries occurred as the result of an accident that was one distinct action, event, or force rather than as a result of separate concurrent causes which could have operated independently of one another to bring about the loss. Because neither rule would apply, we need not consider in this case whether either the concurrent cause rule or the efficient proximate cause rule should be adopted in this state.

We conclude that the exclusion in the Cornhusker policy relating to the ownership of vehicles over 30 years old applied to Haag's claim against the Estate and that therefore Cornhusker was not liable under its garage policy. The district court erred in concluding that the exclusion did not apply and in entering judgment against Cornhusker on both its claim and on Farmers' counterclaim. Because Cornhusker was not liable under its policy, judgment should have been entered against Farmers in the amount of the $166,741.71 payment Cornhusker made toward Haag's judgment, and Farmers' counterclaim should have been dismissed.

*Defense Costs.*

In addition to the portion of the Haag judgment it paid, Cornhusker also sought recovery from Farmers for costs Cornhusker had incurred in defending the Estate against Haag's claim. The district court denied Cornhusker's claim for defense costs, and Cornhusker appeals this ruling.

Although a liability insurer is legally obligated to defend all suits against the insured, even if groundless, false, or fraudulent, the insurer is not bound to defend a suit based on a claim outside the coverage of the policy. *City of Scottsbluff v. Employers Mut. Ins. Co.*, 265 Neb. 707, 658 N.W.2d 704 (2003). Because we concluded above that Haag's claim was outside the coverage of the Cornhusker garage policy, we further conclude that Cornhusker did not have a duty to defend the suit filed by Haag. Farmers conceded it was liable to the Estate under its policy, and therefore

Farmers had a duty to defend the Estate, and Farmers is liable to Cornhusker for the costs Cornhusker incurred defending against Haag's claim. Cornhusker and Farmers stipulated in this case that Cornhusker spent $98,245.65 in defense of Haag's claims against the Estate, and Farmers is therefore liable to Cornhusker for that amount.

## CONCLUSION

We conclude that the exclusion for damages resulting from the ownership, maintenance, or use of vehicles over 30 years old applied to Haag's claims against the Estate and that therefore Cornhusker was not liable for coverage. Because Cornhusker was not liable for coverage of Haag's claim, Cornhusker consequently had no duty to defend the Estate. The district court therefore erred in finding in Farmers' favor on both Cornhusker's claim and on Farmers' counterclaim. We reverse the judgment of the district court, and we remand the cause to the district court with directions to enter judgment in Cornhusker's favor and against Farmers in the amount of $166,741.71 for the portion of the judgment Cornhusker paid to Haag and in the additional amount of $98,245.65 for costs Cornhusker incurred in defending the Estate against Haag's claims. We also direct the district court to dismiss Farmers' counterclaim.

REVERSED AND REMANDED WITH DIRECTIONS.

HENDRY, C.J., and STEPHAN, J., not participating.