MORRIS J. SWEDBERG, APPELLEE, V. BATTLE CREEK MUTUAL
INSURANCE COMPANY, APPELLANT.

356 N.W.2d 456

Filed October 12, 1984.   No. 83-315.

Jewell, Otte, Gatz & Collins, for appellant.

Wyman E. Nelson, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

Battle Creek Mutual Insurance Company (Battle Creek) appeals from a judgment entered by the district court for Burt County, Nebraska, in favor of the appellee, Morris J. Swedberg, and against Battle Creek in the sum of $7,350, together with attorney fees and costs. Swedberg was an insured under a policy of insurance issued by Battle Creek which, among other coverage, insured Swedberg against direct loss to property owned by Swedberg by reason of vandalism and malicious mischief. Battle Creek has assigned two errors in

support of its appeal. First, it maintains that Swedberg did not file a proper proof of loss as required by the policy. Second, it maintains that the trial court erred in finding that the damages sustained by Swedberg were a direct loss from vandalism and malicious mischief, as required by the policy. Because we believe that Battle Creek is correct with regard to its contentions that the trial court erred in finding that the loss sustained by Swedberg was due to vandalism and malicious mischief as defined by the policy and therefore erred in awarding any damages, we need not consider the matter regarding the proof of loss.

The record discloses that sometime prior to the date upon which Swedberg suffered the loss, a policy of insurance was issued by Battle Creek to Swedberg. Section III, the relevant portion of the policy, reads in part: "This policy insures under Section III against direct loss to the property covered by the following perils as defined and limited herein:

. . . .

"9. Vandalism and malicious mischief, meaning only the willful and malicious damage to or destruction of the property covered . . . ."

The evidence discloses that in late December of 1979 or early January of 1980, Swedberg observed that some of his livestock were ill and dying. The livestock were maintained on leased land, in an area away from a main traveled road and accessible only by farm trails. The parties stipulated that the death of the animals was caused by the cattle eating a poisonous substance found in a pail or bucket. It was further undisputed that the poisonous substance ingested by the cattle was a white crystalline substance containing chlorate. The bucket was apparently dumped on the ground, together with other junk and debris, including some molasses and oats. The area where the pail was dumped had earlier been littered with an abandoned disk, a haystacker, and a car body. While Swedberg claims that he did not know of the existence of the molasses, oats, and chlorate before the injury to his livestock, he did know about the abandoned farm machinery. He further testified that before he rented the property he was aware of another dump area on the land some quarter of a mile away. In

order to protect the cattle before placing them on the property, he had specifically fenced around that dump area but did not do so around the area where the abandoned disk, haystacker, and car body were located.

There was no evidence as to who dumped the molasses, oats, and other debris, including the chlorate, nor any evidence as to how it was placed there. Swedberg admitted that he did not believe anyone did it to harm him or his livestock. The evidence simply established that the pail was there and that the chlorate caused the damage.

The central question which we must decide is whether the mere fact that harmful material is placed in an area where harm follows to persons or property establishes coverage under a policy of insurance which insures *only* against vandalism and malicious mischief, defined by the policy as meaning only the willful and malicious damage to or destruction of the property covered. While we have found no Nebraska authority construing such coverage, other jurisdictions have addressed this issue. The better reasoned cases seem to deny coverage.

In attempting to determine whether liability exists under this policy of insurance, we are not at liberty to simply determine what "seems fair" but, rather, are limited in determining whether, under the clear language of a policy, the insurer has in fact insured against the risk involved. Recently, in the case of *Safeco Ins. Co. of America v. Husker Aviation, Inc.*, 211 Neb. 21, 317 N.W.2d 745 (1982), we had occasion to examine and review certain rules of construction regarding policies of insurance. In *Safeco, supra* at 24-25, 317 N.W.2d at 748, quoting from *Adolf v. Union Nat. Life Ins. Co.*, 170 Neb. 38, 101 N.W.2d 504 (1960), we said:

"Under the law of this state the acquiring of insurance has always been a matter of contract. Insurance is a contract by which one party assumes specified risks of the other party for a consideration, and promises to pay him or his beneficiary an ascertainable sum of money on the happening of a specified contingency. It is true, however, that an insurance contract will be construed against the insurance company when the contract or policy is indefinite or ambiguous because it drafted the contract or

policy and is responsible for any indefiniteness or ambiguity therein. But where the contract is plain and unambiguous in its meaning the contract will be enforced according to its terms. Unless this be the law, the attaching of liability on an insurance company, contrary to the plain meaning of the contract, would be nothing less than a rewriting of the liability provisions of the contract. It appears to us that it would be a dangerous innovation of contract law to hold that one is not bound by what he signs, and that that which he fails to read or understand should be read out of the contract."

Furthermore, the *Safeco* case, *supra* at 25-26, 317 N.W.2d at 748, defined this court's rule in construing policies of insurance:

"An insurance policy should be construed as any other contract to give effect to the intent of the parties at the time it was made. The language should be considered not in accordance with what the insurer intended the words to mean, but what a reasonable person in the position of insured would have understood them to mean. If the contract was prepared by the insurer and contains provisions reasonably subject to different interpretations, one favorable to the insurer and one advantageous to the insured, the one favorable to the latter will be adopted. There is, however, a difference between a favorable construction and a favorable finding for the insured. The former does not mean imposing upon the insurer a gratuitous obligation not justified by the usual meaning of the words employed. In giving effect to this principle of law, it is imperative that the contract made by the parties shall be respected and that a new contract is not interpolated by construction. Construction ought not to be employed to make a plain agreement ambiguous for the purpose of interpreting it in favor of the insured. The policy should be given meaning and effect according to the sense of the terms which the parties have used, and if they are clear they should be taken in their plain and ordinary sense."

The fact that an insurer drafts a policy and offers to provide coverage for a specific loss does not mean that courts may

expand that limited liability. In *Lonsdale v. Union Ins. Co.*, 167 Neb. 56, 58-59, 91 N.W.2d 245, 248 (1958), we said:

"* * * the parties to an insurance contract may make the contract in any legal form they desire, and in the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability and to impose whatever conditions they please upon their obligations, not inconsistent with public policy. If plainly expressed, insurers are entitled to have such exceptions and limitations construed and enforced as expressed."

We have previously held that in order to recover upon a policy of insurance of limited liability, the insured must bring himself within its express provisions. See, *Hazuka v. Maryland Cas. Co.*, 183 Neb. 336, 160 N.W.2d 174 (1968); *Sampson v. State Farm Mut. Ins. Co.*, 205 Neb. 164, 286 N.W.2d 746 (1980).

One could reasonably argue that a poisonous substance such as that involved in this case could not have unintentionally or unwillfully appeared on the property. If it was indeed on the property, it must have been placed there by someone, and therefore the placing of the poison was a willful act providing coverage. If that is all that the policy of insurance in question required, then Swedberg would be entitled to recover. However, the policy provides coverage *only* if the loss is due to a willful *and* malicious act. Not only must the substance be intentionally placed upon the property but it must be done with a malicious intent. Here is where the difficulty occurs. Malice is defined as "intention or desire to harm another usu. seriously through doing something unlawful or otherwise unjustified." Webster's Third New International Dictionary, Unabridged 1367 (1968). Certainly, if a can of poisonous substance is placed on the front steps of a home or near the feeding troughs of livestock, both places where one would not expect to find such a substance, the intent of doing harm may be presumed and malice established by reason of the act of placing the poison. But where, as here, the evidence establishes that the area in which the poison was placed had previously been used to dump other debris, we are unable to infer malice on the part of the actor. There is no evidence presented in this case to show that whoever dumped

the junk knew or should have known that cattle were kept in the immediate area or that by dumping this refuse, including the pail with poison, persons or property would be injured. To be sure, there may be sufficient evidence to establish negligence or gross carelessness on the part of someone, but evidence of negligence or carelessness falls far short of establishing malice as required by the policy.

In its judgment order the trial court specifically found as follows: "There is no evidence that the dumper of the rubbish intended to kill animals. However, the rubbish was placed on the property of the insured by a willful or deliberate act." As we have already indicated, the fact that it was done willfully or deliberately would appear to establish half the coverage but fails to satisfy the policy's requirement of proving malice.

Other courts have examined this specific question and appear to have reached similar conclusions. In the case of *Larson v. Fireman's Fund Insurance Co.*, 258 Iowa 348, 139 N.W.2d 174 (1965), the Iowa Supreme Court was presented with a situation where an insured sought to recover for the loss of destroyed turkeys, under a policy similar to this one, on the theory that their death was caused by malicious mischief when an airplane flew over their enclosure at 150 to 200 feet. The court held that the insurer was not liable under its policy where there was no evidence that the unidentified pilot was bent on mischief against the property and was prompted by an evil mind. The Iowa court said at 352, 139 N.W.2d at 176:

> Malice is an essential ingredient of malicious mischief both at common law and under most statutes defining the offense. . . .
>
> . . . .
>
> The established rule is that if, at the time of doing the acts charged, the accused was bent on mischief against some person, ordinarily the owner, and was prompted by an evil mind to destroy or injure the property, then malice is shown, and it is immaterial whether he knew who owned the property. [Citations omitted.]

The record in this case is silent as to the identity of the person who dumped the material, as well as the circumstances surrounding the dumping. The mere fact that a poisonous

substance is placed in a junk pile and is consumed by cattle, absent any other evidence, does not appear to us to be sufficient to prove a malicious act.

Courts generally have been unwilling to presume malice, absent some evidence to support the conclusion. The Louisiana court, in *Nicholas v. New York Underwriters Insurance Co.*, 148 So. 2d 830, 831 (La. App. 1963), said:

> " 'The word "malicious" is characterized by or involves malice; the word "malice" in common speech means ill will or a purpose to harm. Any unlawful act done wilfully and purposely to injure another is malicious as to that person. And malicious mischief has been well defined as the wanton or reckless destruction of or injury to property, implying in some cases a wrong inflicted on another with an evil intent or purpose, or motivated by black and diabolical revenge. * * *' "

And in *Lanza Enterprises, Inc. v. Continental Insurance Co.*, 142 So. 2d 580 (La. App. 1962), the Louisiana court further said at 581:

> In general, the terms "vandalism" and "malicious mischief" refer to wanton or malicious acts *intended* to damage or to destroy property. . . . Thus, to recover under a policy assuring against loss caused by vandalism and malicious mischief, the plaintiff must show by a preponderance of the evidence, direct or . . . circumstantial, that the damage was caused by acts *intended* to damage the property in question.

(Emphasis in original.) See, also, *Ducote v. United States Fidelity & Guaranty Co.*, 241 La. 677, 130 So. 2d 649 (1961).

Swedberg seems to argue that the placing of a can containing poisonous substance in a field where livestock are fed is sufficient evidence of a malicious and willful act. However, the evidence in this case does not support that view. The placing of the debris was not so unusual. Swedberg knew that just a quarter of a mile away the owner of the property had previously dumped junk, and Swedberg had erected a fence in order to keep his cattle away. Likewise, he knew that other junk had already been dumped at the very site where the poisonous substance was placed. As we have previously indicated, it may

very well be that someone was careless or negligent and should be held accountable. That, however, is not enough: "Regardless of how careless, negligent or even illegal an act might be, it is not malicious mischief absent evidence that the act was motivated by malice towards the property or its owner, i.e., by fixed intent to cause injury to specific property." *Imperial Casualty & Indem. Co. of Omaha, Neb. v. Terry*, 451 S.W.2d 303, 305 (Tex. Civ. App. 1970). See, also, *McKinney v. Educator & Executive Insurers, Inc.*, 569 S.W.2d 829 (Tenn. App. 1977); *Rea v. Motors Ins. Corporation*, 48 N.M. 9, 144 P.2d 676 (1944). The burden of proving coverage under a policy where coverage is denied is upon the insured. See *Pintsopolous v. Home Ins. Company*, 340 Mass. 734, 166 N.E.2d 559 (1960).

We simply must conclude that where an insurer contracts to cover a loss for "vandalism and malicious mischief, meaning *only* the willful and malicious damage to or destruction of the property covered" (emphasis supplied), the mere showing that dangerous material was placed in a junk pile and cattle got to it does not fulfill the insured's obligation to come within the limited terms of the policy. For that reason we are compelled to reverse the decision of the trial court and remand the cause with instructions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.