ROBERT ROHDE AND MARGARET ROHDE, APPELLEES, V. FARMERS ALLIANCE MUTUAL INSURANCE COMPANY, APPELLANT.
509 N.W.2d 618

Filed January 7, 1994. No. S-91-1242.

Thomas W. Tye II and, on brief, Michael J. Synek, of Tye, Hopkins & Tye, for appellant.

David W. Jorgensen, of Nye, Hervert, Jorgensen & Watson, P.C., for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

LANPHIER, J.

Appellees, Robert and Margaret Rohde, filed suit for breach of contract against their insurance company, appellant, Farmers Alliance Mutual Insurance Company. The Rohdes had suffered damage to a power unit, which operated a center-pivot irrigation system, when the unit was lubricated with oil contaminated by water. The Rohdes contend that the only way the oil, kept in a sealed drum in a storage building, could become contaminated was through vandalism or mischief. They attempted to recover from Farmers under the vandalism or mischief coverage of their insurance policy. At the close of the Rohdes' case, the Buffalo County Court granted Farmers' motion for a directed verdict, finding the evidence presented was insufficient as a matter of law to support the Rohdes'

claim. The Rohdes appealed to the district court, which reversed the judgment and remanded the case to the county court for trial on the merits.

Farmers appealed the decision of the district court, and the Nebraska Court of Appeals dismissed the appeal for lack of jurisdiction on the grounds that the order was not a final order. See, *Rohde v. Farmers Alliance Mut. Ins. Co.*, 4 NCA 69 (1993). We granted further review. We reverse, and remand with directions.

## BACKGROUND

Robert and Margaret Rohde owned farmland in Buffalo County, Nebraska, improved by a center-pivot irrigation system. In 1984, the Rohdes purchased an insurance policy from Farmers Alliance Mutual Insurance Company, which insured against direct loss to covered farm personal property, including the irrigation system, by vandalism or malicious mischief.

The center-pivot irrigation system was operated by a John Deere power unit. The servicing of this unit was performed exclusively by Robert Rohde and the Rohdes' employee, Eugene Revelenski, approximately three times per year. In the spring of 1985, the Rohdes purchased a 30-gallon drum of Mobil Delvac 1330 lubricating oil for the purpose of servicing the irrigation system. The oil from the drum was also used to lubricate a smaller power unit located in another area. The oil drum was sealed when Robert Rohde received it, and it was stored in a Quonset hut on the farm. The Quonset hut was located approximately 450 feet from a county road. As a matter of convenience, the Quonset hut was not kept locked, and the gate to a fence surrounding the area was kept open during the summer.

During the summer, Robert Rohde changed the oil in the larger unit two or three times with the oil from the new oil drum. The oil was extracted from the barrel by pumping the oil from the bottom of the barrel. Approximately 5 gallons of oil were required for each oil change. The first 18 gallons used in the irrigation system power units produced no mechanical difficulties. However, in August 1985, when Revelenski made a

final oil change, the larger unit began to smoke after running for 15 minutes. After shutting off the unit, Revelenski checked the oil in the unit and noticed a discoloration of the oil. He then changed the oil, using a different source. After this oil change, the unit was seldom used for the remainder of the year. In the spring or summer of 1986, when Robert Rohde started up the power unit, it began to smoke and to use excessive oil.

The Rohdes had the unit repaired by Ken Kirschner, who testified at trial that the unit was damaged due to poor lubrication resulting from water contamination of the oil. The oil in the barrel was also tested twice and found to contain either 2 or .2 percent water. Randolph Baer, a lubrication engineer with Mobil Oil, testified that the contaminant guidelines for Mobil Delvac 1330 oil indicated that any water contamination exceeding .2 percent would make the oil unsuitable for use in lubrication. Mark Callaway, an expert in lubricating oil, tested the oil in the drum and reported that the oil was judged unsatisfactory as a lubricating oil because it contained at least .2 percent water. Both Robert Rohde and Revelenski testified they were the exclusive users of the oil. In addition, Baer and Callaway both reported that it was unlikely that the amount of water in the oil could have been caused by condensation in a barrel stored indoors.

The Rohdes submitted a claim to Farmers on July 6, 1987, under the vandalism and malicious mischief coverage of their insurance policy. Farmers denied the claim. The Rohdes filed a suit against Farmers for breach of contract in the Buffalo County Court.

At the close of the Rohdes' case, the trial court granted Farmers' motion for a directed verdict, finding the evidence presented insufficient as a matter of law to support the Rohdes' claim. The Rohdes appealed to the district court, which reversed the judgment and remanded the case to the county court for a trial on the merits.

Farmers appealed the decision of the district court, and the Court of Appeals dismissed the appeal for lack of jurisdiction after finding the district court's order was not a final one. Farmers assigned the following as error: (1) The district court erred, abused its discretion, and exceeded its scope of review in

determining plaintiffs' evidence was sufficient as a matter of law with regard to the alleged vandalism for the case to have been submitted to the trier of fact and by reversing the lower court's entry of a directed verdict, and (2) the district court misconstrued certain factual evidence and incorrectly applied the law to the facts, specifically in finding the existence of a willful or deliberate act, malicious intent, and proximate causation.

## JURISDICTION

Although neither of the parties objected to the jurisdiction of the Court of Appeals, it was the duty of the Court of Appeals to determine whether or not it had jurisdiction over the matter. Lack of subject matter jurisdiction may be raised sua sponte by a court. The parties cannot confer subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent, nor may subject matter jurisdiction be created by waiver, estoppel, consent, or conduct of the parties. *Anderson v. HMO Nebraska, ante* p. 237, 505 N.W.2d 700 (1993). Whether a question is raised by the parties concerning jurisdiction of a lower court or tribunal, it is not only within the power but the duty of an appellate court to determine whether the appellate court has jurisdiction over the matter before it. *In re Interest of D.M.B.*, 240 Neb. 349, 481 N.W.2d 905 (1992).

There are three types of final orders which may be reviewed on appeal. Neb. Rev. Stat. §§ 25-1902 (Reissue 1989) and 25-1911 (Cum. Supp. 1992). The three types are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered.

*Jarrett v. Eichler, ante* p. 310, 313, 506 N.W.2d 682, 684 (1993).

To be a "final order" under the first type of reviewable order, an order must dispose of the whole merits of the case and must leave nothing for further consideration of the court, and thus, the order is final when no further action of the court is required to dispose of the pending cause; however, if the cause is retained

for further action, the order is interlocutory. *In re Interest of L.W.*, 241 Neb. 84, 486 N.W.2d 486 (1992). Moreover, if a party's substantial rights are not determined by the court's order and the cause is retained for further action, the order is not final for purposes of appeal. *Larsen v. Ralston Bank*, 236 Neb. 880, 464 N.W.2d 329 (1991).

## SUBSTANTIAL RIGHT

We find a substantial right of Farmers' was affected. A substantial right is an essential legal right, not a mere technical right. *Jarrett v. Eichler, supra.* The trial court had granted a directed verdict to Farmers. The district court's order reversing the judgment of the trial court and remanding the case for a trial on the merits took away a judgment that had been rendered in Farmers' favor.

## FINAL ORDER

The district court's order was a final order for purposes of appeal because its judgment could be executed without any further action by the district court. In *Ribble v. Furmin*, 69 Neb. 38, 94 N.W. 967 (1903), we held that a judgment of the district court on appeal from a final order of an inferior court, which leaves nothing further to be done in that district court, is a final order, even though the case is remanded for further proceedings below. At issue in *Ribble v. Furmin* was the propriety of this court's reviewing an order of the district court reversing an order of the county court denying leave to file a claim in an estate proceeding. The district court reversed the order of the county court and ordered the county court to permit the petitioner to file the claim. The district court's order was appealed. The claimant moved to dismiss on the ground that the district court's order was not a final order.

In *Ribble v. Furmin*, we stated that a judgment or order which precludes further inquiry into the rights of the parties in the court *in which it is rendered* is final. Therefore, because the district court's order at issue in *Ribble v. Furmin* precluded any further inquiry by the district court as to the rights of the parties, it was a final order.

A petition in error in the district court to review a judgment or order of an inferior tribunal is an

independent proceeding, having for its immediate object a reversal of the judgment or order complained of. Hence, a judgment of reversal in such a case may be reviewed in this court, notwithstanding the cause stands for trial on its merits in the district court . . . . As the immediate object of the proceeding is to reverse the judgment or order of the inferior tribunal, the proceeding is regarded as fully terminated when that judgment is reversed, and the original cause remains for trial in the district court after reversal, not the independent error proceeding.

*Ribble v. Furmin*, 69 Neb. at 41-42, 94 N.W. at 969. Accord, *Tootle, Hosea & Co. v. Jones*, 19 Neb. 588, 27 N.W. 635 (1886); *Banks v. Uhl*, 5 Neb. 240 (1876).

The court in *Ribble v. Furmin* added:

[W]hen, on appeal, the judgment of reversal also remands the cause for further proceedings in the inferior tribunal, it is manifest that the cause is fully disposed of so far as the district court is concerned. It has nothing more to do. *Its judgment may be executed fully without any further action*. All further inquiry into the rights of the parties in that court is precluded. The judgment of the district court is final because it terminates the proceedings in that court and leaves nothing pending therein.

(Emphasis supplied.) 69 Neb. at 43, 94 N.W. at 969.

In the case before us, once the district court rendered a judgment remanding the case for a trial on the merits in the lower court, its judgment was final because it terminated the proceedings in the district court, and its judgment reversing the trial court's order could be fully executed without any further action by the district court.

### *Martin v. Zweygardt*

The Court of Appeals found it had no jurisdiction to hear the appeal because the decision of the district court was not a final, appealable order. The Court of Appeals cited *Martin v. Zweygardt*, 199 Neb. 770, 771, 261 N.W.2d 379, 380 (1978), in which this court stated, "[A] judgment of reversal with a remand for further proceedings is not final for the purposes of appeal." However, we find that *Martin v. Zweygardt* is

inconsistent with prior decisions regarding final orders. *Martin v. Zweygardt* distinguished *Ribble v. Furmin, supra,* stating that the order in the latter case was appealable because a proceeding for leave to file a claim was distinct from a hearing on the merits of the claim at the trial court level. This distinction is unwarranted. The issue in both cases was whether an order of the district court reversing a county court's final order, resulting in a full hearing on the merits of the claim in the county court, is a final order. In concluding such an order of the district court was a final order, this court focused, in *Ribble v. Furmin,* on whether the district court had retained the cause for any further action by the district court, not on whether the proceeding for leave to file the claim was separate from the hearing on the claim. This court found that since the district court did not retain the cause for further action, the district court's order remanding the case for further proceedings was a final order. This is a correct statement of the law. To the extent that *Martin v. Zweygardt* is construed to provide that an order of a district court reversing a final order of the trial court and remanding the case for a trial on the merits is never a final order, it is overruled.

Since we find that the district court's judgment of reversal with a remand for further proceedings was a final order, this court has jurisdiction to review the issues raised on appeal by the parties.

## DIRECTED VERDICT

In reviewing the action of a trial court, an appellate court must treat a motion for directed verdict as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed. Such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Wilson v. Misko, ante* p. 526, 508 N.W.2d 238 (1993). In order to sustain a motion for directed verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion from the evidence. *Id.*

## VANDALISM OR MALICIOUS MISCHIEF

Farmers contends the district court erred in remanding the case for a trial on the merits because the Rohdes failed to present sufficient evidence to show that the water in the oil barrel had resulted from an intentional, malicious act, as required under the insurance coverage.

The policy states in relevant part: "This policy under this form insures against direct loss to the property covered by the following perils . . . . **Vandalism or Malicious Mischief,** meaning only the wilful and malicious damage to or destruction of the property covered . . . ."

When asserting a breach of an insurance contract, the plaintiff has the burden of bringing his claim within the limitations of the policy. The Rohdes must therefore prove both that the loss was the result of the vandalism and that it was accompanied by intent and malice. See *Craig v. Farmers Mut. Ins. Co.*, 239 Neb. 271, 476 N.W.2d 529 (1991). See, also, *Ditloff v. State Farm Fire & Cas. Co.*, 225 Neb. 375, 406 N.W.2d 101 (1987); *Swedberg v. Battle Creek Mut. Ins. Co.*, 218 Neb. 447, 356 N.W.2d 456 (1984).

We have addressed the issue of coverage under the vandalism and mischief clause of an insurance policy in several cases. See, *Craig v. Farmers Mut. Ins. Co., supra*; *Ditloff v. State Farm Fire & Cas. Co., supra*; *Swedberg v. Battle Creek Mut. Ins. Co., supra*.

In *Swedberg v. Battle Creek Mut. Ins. Co.*, we held that to recover under a policy insuring against loss caused by vandalism and malicious mischief, the plaintiff must show by a preponderance of the evidence, direct or circumstantial, that the damage was caused by acts intended to damage the property in question.

Circumstantial evidence is not sufficient to sustain a verdict depending solely thereon for support, unless the circumstances proved by the evidence are of such a nature and so related to each other that the conclusion reached by the jury is the only one that can fairly and reasonably be drawn therefrom. *Ditloff v. State Farm Fire & Cas. Co., supra.*

In *Ditloff v. State Farm Fire & Cas. Co.*, we addressed the issues of intent and malice. The plaintiffs sought payment from

their insurance company under a substantially similar clause to the one at issue in this case. They alleged that vandals had willfully and maliciously opened the gate on one of their grain trailers, causing corn to flow from the trailer onto the ground. Some of the plaintiffs' cattle ate excessive quantities of corn and died.

## INTENT

In *Ditloff v. State Farm Fire & Cas. Co.*, the plaintiffs offered no direct proof of who opened the gate. Instead, they sought to prove it was an unidentified person by ruling out other possible actors, to wit, the cattle, or the two men who fed the cattle. We found the plaintiffs presented sufficient direct evidence to refute the two other possible theories of who or what opened the gate to the grain.

> When there is direct evidence sufficient to refute all theories of the cause of damage except the one established solely by circumstantial evidence, there then remains but one inference deducible from the facts under the circumstances, and it is within the province of the trier of fact to make this determination.

*Ditloff v. State Farm Fire & Cas. Co.*, 225 Neb. at 380, 406 N.W.2d at 105.

In the present case, the Rohdes presented sufficient direct evidence to refute Farmers' theory that the water in the oil drum had resulted from condensation. The Rohdes presented evidence that the oil drum was not contaminated prior to arriving at the farm. The oil drum was sealed when Robert Rohde received it, and the oil was used two or three times without causing damage to either of the power units. The damaged power unit was serviced exclusively by Robert Rohde and Eugene Revelenski. Although Randolph Baer stated that an oil barrel would be more prone to condensation once the factory seal was broken and that a half-filled drum of oil was more prone to condensation, he also stated that even if condensation did occur, it would be highly unlikely that the condensation would result in the amount of water found in the oil drum. We find the evidence presented by the Rohdes sufficiently refutes the alternative theory set forth by Farmers

and raises the inference that someone intentionally contaminated the oil drum with water.

## MALICE

We now turn to the issue of malice. Citing *Swedberg v. Battle Creek Mut. Ins. Co.*, 218 Neb. 447, 356 N.W.2d 456 (1984), we recognized in *Ditloff v. State Farm Fire & Cas. Co.* that malice can be presumed from the mere doing of an act. In *Swedberg v. Battle Creek Mut. Ins. Co.*, the insured's cattle died after ingesting a poisonous substance found in a bucket. The bucket with the poisonous substance had been discarded on a portion of the insured's property which had other discarded material on it. There was no evidence of who had discarded the substance, and the insured admitted he did not believe anyone intended to harm him or his livestock.

The court in *Swedberg v. Battle Creek Mut. Ins. Co.* found that in order to recover under the policy, the plaintiff had to present evidence which showed the bucket with the poison was placed there intentionally and with a malicious intent. While finding intent in the act of discarding the material, the court found there was insufficient evidence to prove malice. The evidence established that the area in which the poison was discarded had been previously used to discard other material. The court also found no evidence to suggest the person discarding the material knew or should have known that the cattle were within the immediate area and would be harmed by the substance. However, the court noted:

> Certainly, if a can of poisonous substance is placed on the front steps of a home or near the feeding troughs of livestock, both places where one would not expect to find such a substance, the intent of doing harm may be presumed and malice established by reason of the act of placing the poison.

*Swedberg v. Battle Creek Mut. Ins. Co.*, 218 Neb. at 451, 356 N.W.2d at 460.

We find the court's example in *Swedberg v. Battle Creek Mut. Ins. Co.* analogous to the situation in the case before us. No one would expect anyone to pour water into a drum containing oil. Certainly, the Rohdes did not expect to find

water inside the oil drum, especially since the oil had been used at least twice before without any problems. Furthermore, we held in *Ditloff v. State Farm Fire & Cas. Co.*, 225 Neb. at 384, 406 N.W.2d at 106, that "malice may be presumed from an intentional act if damage of some kind to some property should or could have been reasonably expected to result from such act." It would be reasonable to expect that the oil for lubrication contained in the drum, when contaminated with water, would cause damage when used to service the power units. Under these facts, a presumption of malice arises. A directed verdict should not have been granted by the trial court.

## CONCLUSION

The order of the district court reversing the county court's judgment and remanding the case for a trial on the merits was a final and appealable order because no further action of the district court was required to dispose of it and because it affected a substantial right of Farmers'. In addition, we find that the Rohdes presented sufficient evidence to overcome a directed verdict. Therefore, we reverse the decision of the Court of Appeals and remand the cause to that court with directions to remand the cause consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.