# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1104

_____

Nicholas Sampson

*Plaintiff - Appellee*

v.

Investigator William Lambert, in his official and individual capacities;
Investigator Charles O'Callaghan, in his official and individual capacities;
Sergeant Sandy Weyers, in her official and individual capacities; Cass County
Sheriff's Office, a Nebraska political subdivision; Does 1-8, in their official and
individual capacities; Investigator Earl Schenck, in his official and individual
capacities; Douglas County Sheriff's Office

*Defendant*s

David W. Kofoed, in his official and individual capacities

*Defendant - Appellee*

v.

St. Paul Fire and Marine Insurance Company, also known as The Saint Paul
Travelers Companies, Inc.

Garnishee - Appellant

_____

No. 17-1106

_____

Matthew Livers

*Plaintiff - Appellee*

v.

Earl Schenck, Cass County Sheriff's Investigator; William Lambert, Nebraska State Patrol Investigator; Charles O'Callaghan, Nebraska State Patrol Investigator; Sandra Weyers, Cass County Sheriff's Sergeant; County of Cass, Nebraska

*Defendant*s

David Kofoed, Commander of the Douglas County Sheriff's Office Crime Scene Investigation Division

*Defendant - Appellee*

Tim Dunning, Sheriff of Douglas County; County of Douglas, Nebraska

*Defendant*s

v.

St. Paul Fire and Marine Insurance Company

*Garnishee - Appellant*
_____

No. 17-1114
_____

Nicholas Sampson

*Plaintiff - Appellant*

v.

-2-

Investigator William Lambert, in his official and individual capacities; Investigator Charles O'Callaghan, in his official and individual capacities; Sergeant Sandy Weyers, in her official and individual capacities; Cass County Sheriff's Office, a Nebraska political subdivision; Does 1-8, in their official and individual capacities; Investigator Earl Schenck, in his official and individual capacities; Douglas County Sheriff's Office

*Defendant*s

David W. Kofoed, in his official and individual capacities

*Defendant - Appellee*

v.

St. Paul Fire and Marine Insurance Company, also known as The Saint Paul Travelers Companies, Inc.

*Garnishee - Appellee*

_____

No. 17-1117

_____

Matthew Livers

*Plaintiff - Appellant*

v.

Earl Schenck, Cass County Sheriff's Investigator; William Lambert, Nebraska State Patrol Investigator; Charles O'Callaghan, Nebraska State Patrol Investigator; Sandra Weyers, Cass County Sheriff's Sergeant; County of Cass, Nebraska

*Defendant*s

David Kofoed, Commander of the Douglas County Sheriff's Office Crime Scene Investigation Division

*Defendant - Appellee*

Tim Dunning, Sheriff of Douglas County; County of Douglas, Nebraska

*Defendant*s

v.

St. Paul Fire and Marine Insurance Company, also known as The Saint Paul Travelers Companies, Inc.

*Garnishee - Appellee*

_____

Appeals from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: February 13, 2018
Filed: September 11, 2018

_____

Before SMITH, Chief Judge, MURPHY and COLLOTON, Circuit Judges.[*]

_____

SMITH, Chief Judge.

St. Paul Fire and Marine Insurance Co. ("St. Paul Insurance") appeals the district court's grant of summary judgment to Matthew Livers and Nicholas Sampson.

_____

[*]Chief Judge Smith and Judge Colloton file this opinion pursuant to 8th Cir. Rule 47E.

The court concluded that St. Paul Insurance had a duty under its coverage policy to indemnify David Kofoed for intentional acts Kofoed committed against Livers and Sampson during his employment as a law enforcement officer for Douglas County, Nebraska. St. Paul Insurance contends that its own policy—with some narrow exceptions, including for malicious prosecution—bars indemnification of intentional criminal acts. We agree with St. Paul Insurance that its policy expressly precludes indemnification of intentional criminal acts and that Kofoed's act of evidence tampering does not fall within the malicious prosecution exception. We reverse.

## I. *Background*

Commander David Kofoed of the Douglas County Crime Scene Investigation Unit tampered with evidence while investigating the April 17, 2006 murders of Sharmon and Wayne Stock. Murder charges—driven in part by the tampered evidence—were filed against cousins Matthew Livers and Nicholas Sampson, but the charges eventually were dropped. *See Livers v. Schenck*, 700 F.3d 340 (8th Cir. 2012) (setting forth the facts of the case).

As relevant here, Livers and Sampson filed 42 U.S.C. § 1983 suits against, among others, Kofoed, the Cass County Sheriff's Office, the Nebraska State Patrol, and the Douglas County Sheriff's Office. They alleged numerous constitutional violations, including: conspiring to coerce Livers's confession; planting false evidence; concealing exculpatory evidence; making arrests without probable cause; failing to intervene; failing to train; and violating their due process rights under the Fifth and Fourteenth Amendments. Initially, Douglas County, Kofoed's employer, retained outside counsel to defend Kofoed. While the civil case proceeded, Kofoed was charged criminally, tried, and convicted in Nebraska state court for evidence tampering in violation of Neb. Rev. Stat. § 28-922(1)(b). Subsequent to his conviction, Douglas County terminated Kofoed's employment and stopped paying for his legal expenses. Kofoed's counsel withdrew, and Kofoed proceeded pro se.

The defendants, minus Kofoed, moved in the district court for summary judgment seeking qualified immunity. The district court denied the motions, finding genuine disputes of material fact. We affirmed the district court's denial of qualified immunity on the claims of fabrication of evidence, false arrest, coerced confession, and conspiracy to violate Livers's and Sampson's civil rights. *Livers*, 700 F.3d at 362. We reversed the district court's denial of qualified immunity on Livers's and Sampson's due process Fifth Amendment claims, as well as the alleged failures to disclose exculpatory evidence and to intervene. *See id.* The defendants, again without Kofoed, then settled with Livers and Sampson, leaving Kofoed the sole remaining defendant in the case.

Kofoed took no action in the suits as a pro se defendant. Although the court notified him of the trial date in Livers's case, he failed to appear. He also did not file an answer to Livers's amended complaint. He likewise was absent at the pretrial conference. The district court then entered default judgment against Kofoed in Livers's case. Sampson then moved for summary judgment against Kofoed, and the district court granted the motion in favor of Sampson, noting that "[t]he uncontroverted evidence submitted by [Sampson] establishes that Kofoed planted evidence in the homicide investigation at issue and conspired with others to fabricate evidence and to falsely implicate [Sampson] in the murders." *Sampson v. Kofoed*, No. 8:07-cv-00155-JFB-MDN, 2014 WL 250515, at *1 (D. Neb. Jan. 21, 2014) (citation omitted). The district court entered judgment against Kofoed in Sampson's case. The court awarded Sampson $965,000 in compensatory damages, $965,000 in punitive damages, $129,041.09 in costs, and $199,675 in attorney's fees. It awarded Livers $1,650,000 in compensatory damages, $1,650,000 in punitive damages, $52,981.32 in costs, and $999,656.50 in attorney's fees. Kofoed did not appeal the judgment.

Livers and Sampson then initiated garnishment proceedings against St. Paul Insurance based on Douglas County's insurance policy to protect its law enforcement officers from damage claims filed against them for tortious conduct on the job. St.

Paul Insurance described the policy as covering "Public Sector Services." Appellant's Add. at 81 (bold and all caps omitted). The policy indemnifies protected persons against damages and injuries that: "result[] from law enforcement activities or operations by or for [the covered person]; happen[] while [the] agreement is in effect; and [are] caused by a wrongful act that is committed while conducting law enforcement activities or operations." *Id.* at 71 (bullet points omitted). The wrongful acts include "[f]alse arrest," "[m]alicious prosecution," and "[v]iolation of civil rights protected under any federal, state, or local law." *Id.* at 72. Notably, the policy expressly excludes "[c]riminal, dishonest, fraudulent, or malicious acts." *Id.* at 71.

Livers and Sampson moved for partial summary judgment, arguing that St. Paul Insurance had a duty to indemnify Kofoed under its policy with Douglas County. St. Paul Insurance cross-moved for summary judgment, asserting that it had no duty to indemnify Kofoed's criminal act. It also argued, in the alternative, that even if it had a duty to indemnify, that duty was not yet triggered because Douglas County had not exhausted the policy's $250,000 self-insured retention (SIR) payment amount, as required. The district court granted partial summary judgment to Livers and Sampson. The court concluded that Kofoed's act, though criminal, is covered under St. Paul Insurance's "malicious prosecution" exception; the insurance company thus had a duty to indemnify Kofoed for both compensatory and punitive damages, as well as costs and attorney's fees. Further, the court found that Douglas County did not have to exhaust the $250,000 SIR payment. The district court then ordered St. Paul Insurance to pay $1,643,500 to Sampson and $3,356,500 to Livers—totaling $5,000,000, the policy cap—but denied prejudgment interests in the damages award.

II. *Discussion*

On appeal, St. Paul Insurance reiterates that it owed no duty to indemnify Kofoed. Alternatively, it argues that even if it had a duty to indemnify, that duty had not been triggered because Douglas County had not exhausted the policy's SIR payment requirement. St. Paul Insurance also challenges the punitive damages award.

Livers and Sampson cross-appeal, arguing that they are entitled to prejudgment interest.

## A. *Duty to Indemnify*

We first address the central question on appeal—whether St. Paul Insurance had a duty to indemnify Kofoed. The company asserts that the court erred in holding that Kofoed's conduct fell within the malicious prosecution exception to the insurance coverage exclusion.[1] In response, Livers and Sampson contend that the policy's exclusion-and-exceptions language is ambiguous and illusory and thus cannot benefit St. Paul Insurance. We review de novo the district court's grant of summary judgment and its interpretation of Nebraska law. *See W3i Mobile, LLC v. Westchester Fire Ins. Co.*, 632 F.3d 432, 436 (8th Cir. 2011) (citing *Babinski v. Am. Family Ins. Grp.*, 569 F.3d 349, 351 (8th Cir. 2009)).

### 1. *Illusory Coverage*

Livers and Sampson say that St. Paul Insurance's coverage is illusory because while the policy purports to provide an exception to wrongful acts such as false arrest, false imprisonment, and civil rights violations, the policy excludes criminal, dishonest, fraudulent, or malicious acts or omissions. They say that "[i]t would be impossible for a law enforcement officer to commit wrongful acts of false arrest, detention and imprisonment, malicious prosecution and civil rights violations, without simultaneously committing *either* criminal, dishonest, fraudulent or malicious acts." Appellees' Br. at 32.

We disagree. St. Paul Insurance's policy coverage is not illusory. It excludes coverage for acts with specific intent, but it covers general intent acts. Neither false

---

[1] St. Paul Insurance also argues that Nebraska public policy prohibits coverage of intentional acts. Because we hold that St. Paul Insurance has no duty to indemnify Kofoed, we need not resolve the question of whether Nebraska public policy contravenes coverage of intentional acts.

arrest nor false imprisonment requires a specific intent. *See Schertz v. Waupaca Cty.*, 875 F.2d 578, 584 (7th Cir. 1989) (explaining that "intent is not a material issue" in cases of false arrest or imprisonment.); *State v. Miller*, 341 N.W.2d 915, 917 (Neb. 1983) ("[S]pecific intention . . . is not an element of false imprisonment."). Likewise, a number of civil rights violations do not require proof of specific intent, or intent at all. *See Graham v. Connor*, 490 U.S. 386, 397 (1989) ("As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." (citations omitted)). Finally, while the policy excludes criminal, dishonest, fraudulent, or malicious acts, it also expressly states that it will not "apply [the] exclusion to personal injury caused by malicious prosecution." Appellant's Add. at 77. Thus, the policy excludes many specific intent acts, but it makes a specific exception for malicious prosecution. The policy also covers general intent acts or omissions, or conduct where intent is not at issue. The policy can provide what it promises and is thus not illusory.

### 2. *Malicious Prosecution Exception to Coverage Exclusion*

St. Paul Insurance asserts that its policy with Douglas County expressly excludes intentional acts. The company acknowledges that the policy does provide some exceptions to the exclusions to cover certain intentional acts such as malicious prosecution. Nevertheless, it contends that the district court erred when it concluded that Kofoed's evidence-tampering crime is analogous to civil malicious prosecution. We agree.

"The interpretation of an insurance policy is a question of law . . . ." *Dutton-Lainson Co. v. Cont'l Ins. Co.*, 716 N.W.2d 87, 96 (Neb. 2006) (citing *Molina v. Am. Alternative Ins. Corp.*, 699 N.W.2d 415 (Neb. 2005)). When an insurer denies coverage, the plaintiff must prove coverage. *See Farm Bureau Ins. Co. v. Martinsen*, 659 N.W.2d 823, 827 (Neb. 2003) (citing *Coppi v. West Am. Ins. Co.*, 524 N.W.2d

804 (Neb. 1994); *Swedberg v. Battle Creek Mut. Ins. Co.*, 356 N.W.2d 456 (Neb. 1984)). However, "the burden to prove that an exclusionary clause applies rests upon the insurer." *Farm Bureau Ins. Co. v. Witte*, 594 N.W.2d 574, 582 (Neb. 1999) (citing *Econ. Preferred Ins. Co. v. Mass*, 497 N.W.2d 6, 8 (Neb. 1993)). The burden then shifts back to the plaintiff to show that an exception to the insurance exclusion applies. *Dutton-Lainson Co.*, 716 N.W.2d at 96 (citations omitted).

Here, the district court agreed with St. Paul Insurance that its policy language expressly excludes criminal, dishonest, and fraudulent acts. But the court then concluded that the malicious prosecution exception to the exclusion applied, because the crime of evidence tampering is analogous to the tort of malicious prosecution. Alternatively, the district court and Livers and Sampson say that Kofoed's evidence tampering is part of a malicious prosecution civil conspiracy between all the defendants; St. Paul Insurance, therefore, must indemnify Kofoed under its malicious prosecution exception to the policy exclusion. Livers and Sampson also say that the policy's exclusion and exception clauses are hopelessly contradictory. We disagree.

A. *Evidence Tampering as Analogous to Malicious Prosecution*

Under Nebraska law, a person tampers with physical evidence if he, "believing that an official proceeding is pending or about to be instituted and acting without legal right or authority, . . . knowingly makes, presents, or offers any false physical evidence with intent that it be introduced in the pending or prospective official proceeding." Neb. Rev. Stat. § 28-922(1)(b). In contrast, the tort of malicious prosecution comprises these conjunctive elements: "(1) the commencement or prosecution of the proceeding against the plaintiff, (2) its legal causation by the present defendant, (3) its bona fide termination in favor of the plaintiff, (4) the absence of probable cause for such proceeding, (5) the presence of malice therein, and (6) damages." *McKinney v. Okoye*, 842 N.W.2d 581, 591 (Neb. 2014) (citations omitted).

-10-

Criminal evidence tampering and civil malicious prosecution differ sufficiently such that one is not analogous to the other. A person who tampers with evidence does so either to undermine or to bolster a prosecution. A malicious prosecution purposefully misuses the government's prosecutorial power to start or sustain criminal charges against a person without probable cause. It does not seek to undermine them. The district court acknowledged this critical difference, but it incorrectly concluded that malicious prosecution is the tort analog of the crime of evidence tampering. The court reasoned that people are more likely to tamper with evidence to bolster a flagging prosecution and noted that Kofoed's conduct harmed Livers and Sampson. While both acts are dishonest and purposeful, they are not interchangeable. A person may commit the tort of malicious prosecution without tampering with evidence in violation of the law. Likewise, a person tampering with evidence may not satisfy the elements of malicious prosecution.

Finally, St. Paul Insurance's policy with Douglas County undeniably covers malicious prosecution. But, it also expressly excludes all criminal acts. We hold that St. Paul Insurance's malicious prosecution exception for intentional acts did not include the crime of evidence tampering. *See Farm Bureau Ins. Co.*, 594 N.W.2d at 582 ("[W]here the event for which an insured seeks coverage is plainly outside the scope of the coverage encompassed in the policy according to a plain reading of its terms, an insurer may not be obligated to provide coverage to the insured." (citations omitted)).

B. *Malicious Prosecution Conspiracy*

Next, Livers and Sampson contend that even if Kofoed's evidence tampering is not malicious prosecution by itself, Kofoed's conspiracy with the other defendants to deprive Livers's and Sampson's civil rights included malicious prosecution. We disagree with this reasoning as well.

The district court and Livers and Sampson rely in part on our previous opinion, where we held that "Livers and Sampson have presented sufficient allegations and evidence of a violation of a clearly established right to survive . . . summary judgment on [the] conspiracy claims." *Livers*, 700 F.3d at 362. However, while we held there was sufficient evidence for a reasonable jury to find a conspiracy, our holding did not reach the issue of malicious prosecution. Rather, we affirmed the district court's denial of qualified immunity to the defendants because there was "a question of fact for the jury" to decide whether the other defendants had knowledge of—or were complicit in—Kofoed's actions. *Id.* at 355.

That question of fact remained untried. Kofoed defaulted, and the other defendants settled with Livers and Sampson. Although the district court entered default judgment against Kofoed, St. Paul Insurance asserts that the judgment did not include malicious prosecution because neither Livers nor Sampson raised a claim of malicious prosecution in their complaints. St. Paul Insurance is correct. "Entry of default judgment does not preclude a party from challenging the sufficiency of the complaint on appeal." *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) (citations omitted). "A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citing *Thomson v. Wooster*, 114 U.S. 104, 113 (1885)); *see also Remexcel Managerial Consultants, Inc. v. Arlequin*, 583 F.3d 45, 53 (1st Cir. 2009) ("[I]n the normal case after the entry of default a 'defendant may still contest a claim on the ground that the complaint does not allege facts that add up to the elements of a cause of action.'" (first quoting *Conetta v. Nat'l Hair Care Ctrs., Inc.*, 236 F.3d 67, 76 (1st Cir. 2001), then citing *Gowen v. F/V Quality One*, 244 F.3d 64, 67 n.2 (1st Cir. 2001))).

Here, Livers made no mention of malicious prosecution in his five-count complaint.[2] Sampson included "Malicious Prosecution" in the title of Count I of his first amended complaint. But, other than the conclusory allegation that Kofoed and the other defendants procured false evidence, the complaint pleaded no facts to support that claim. Thus, neither Livers nor Sampson pleaded malicious prosecution as a cause of action. A district court may not enter default judgment based on a complaint not well-pleaded. *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) ("[W]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." (alteration in original) (quoting *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005))).

We thus hold that because Livers and Sampson failed to plead sufficiently the malicious prosecution cause of action in their complaints, the district court's entry of default judgment against Kofoed did not include malicious prosecution.[3] And, because Kofoed's judgment did not include malicious prosecution—the sole exception to the excluded acts available to Kofoed under St. Paul Insurance's policy—Livers and Sampson failed in their burden to show that an exception to the insurance exclusion applied. St. Paul Insurance thus has no duty to indemnify Kofoed. We thus need not address whether a valid default judgment against Kofoed would be binding on St. Paul as the insurer.

---

[2]Count I: Due Process–Coercive Interrogation and Fabrication of Evidence; Count II: False Arrest; Count III: Due Process—Concealment of Exculpatory Evidence; Count IV: Conspiracy; and Count V: Failure to Intervene. *See* Second Am. Compl., Jury Demand, and Designation of Place of Trial at 24–30, *Livers v. Schenck et al.*, No. 8:08-cv-00107-JFB-MDN (D. Neb. Apr. 2, 2010), ECF No. 238.

[3]Our holding that St. Paul Insurance has no duty to indemnify Kofoed renders all other issues in this appeal moot.

-13-

## III. *Conclusion*

For the reasons stated above, we reverse the district court's judgment and remand to that court for further action consistent with this opinion.

_____